EDWIN M. WILMER, Trustee.

*vs.*

THE PHILADELPHIA AND READING COAL AND
IRON COMPANY and THE BALTIMORE TRUST
COMPANY.

*Interpleader: nature of—; pleading; effect of answer; admissions; exhibits. Cross-bills: not available as defenses.
Landlord and tenant: when entitled to an
interpleader.*

Jurisdiction in cases of interpleader is founded upon a conflict between two or more persons severally claiming the same debt through separate and distinct interests, while the person liable to discharge the debt is unable to ascertain which claimant is entitled, and is threatened with two or more suits in respect to a subject-matter in which he claims no interest, and in regard to which he is an indifferent stakeholder.   pp. 606, 607

Where a case is set down by the complainants for hearing on bill and answer, the allegations of pertinent facts, as distinguished from matters of opinion, in the answers, must be taken as true; and material averments of the bill denied by the answers, or neither admitted nor denied, can not be considered.

p. 607

But admissions, within the meaning of the rule, need not be expressly made, but may be *inferred* from the necessary or natural import of the language used.                                 p. 608

In considering the import and meaning of the answer, the exhibits of the defendant may be considered.                 p. 609

In general, in the case of interpleader, the amount of the fund in the hands of the complainant must be taken as stated in the bill, and can not be controverted by the answers.     p. 609

If it should be shown that the amount alleged to be due, and which the complainant offers to pay into court, is not in fact the true amount, because of improper deductions by the plaintiff from the amount actually due, it may disclose a case in which the plaintiff is not indifferent as between the defendants, and not entitled to require them to interplead.     p. 609

In an interpleader suit, the answer of one defendant may be read as evidence against a co-defendant, to prove that the defendant, whose answer is read, made a claim for the fund in dispute.                                    p. 609

In such a suit, a denial, in the answer of one of the defendants, of the facts upon which the claim of the other defendant rests, is immaterial, as relating to matters to be litigated between the defendants.                           p. 609

. To entitle a complainant to a decree for an interpleader, it is not necessary for him to decide close questions of fact or nice questions of law; but it is sufficient if there is a reasonable doubt as to which of the claimants is entitled to the debt. p. 609

Although in general a tenant can not maintain a suit for interpleader against his landlord, an exception is where there is privity between the landlord and the opposing claimant, as where the title of the other claimant is derived from that of the lessor, or where both defendants claim under the lessor by different titles.                                    p. 610

To defeat the complainant's right to an interpleader on the ground that he is not an indifferent stakeholder, the interest which it is objected that he has must be in the very thing or fund itself which is the subject-matter of the suit.   pp. 610-611

A subject not germane to the pending controversy can not be injected into that litigation by means of a cross-bill.     p. 611

A defendant in a strict interpleader suit can not have relief by cross-bill against the complainant.               p. 611

The litigation between the complainant and defendant must be confined to the thing or debt in the hands of the complainant, and the defendant can not inject a different subject-matter into the litigation.                                                      p. 611

*Decided January 13th, 1915.*

Appeal from the Circuit Court of Baltimore City. (DUFFY, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*David Ash,* for the appellant.

*H. Ralph Cover* and *Enos S. Stockbridge* (with whom was *Ralph Robinson* on the brief), for the appellees.

THOMAS, J., delivered the opinion of the Court.

The bill of complaint in this case was filed by the Philadelphia and Reading Coal and Iron Company, a Pennsylvania corporation (hereinafter referred to as the Coal Company), alleging that in January, 1900, Cumberland Dugan, "as attorney in fact for all the Dugan heirs," executed to it a lease of certain tracts of coal lands in Schuylkill County, Pennsylvania, a copy of which was filed with the bill; that Philip N. Nicholas, a lunatic, was, at the time of the filing of the bill, entitled, "by reason of his being heir at law of his brother, C. D. Nicholas, one of the said Dugan heirs, who died intestate on the 23rd of April, 1913, to a one-seventy-second share of the royalties due under such lease from the first day of July to the 30th day of November, 1913, such royalties amounting to $49.93 and accruing under the" said lease; that Edwin M. Wilmer claims to be substituted trustee of the trust estate under the will of Jane H. Nicholas, and

that the Baltimore Trust Company, a body corporate of the State of Maryland (hereinafter called the Trust Company), to be substituted committee of Philip N. Nicholas; that the said Edwin M. Wilmer (hereinafter referred to as the Trustee) "has demanded and claims that the amount now due under the said lease shall be paid to him" as Trustee, as appears from his letters filed with the bill as a part thereof, and that the Trust Company has likewise demanded and "claims the same shall be paid to it" as Committee of Philip N. Nicholas, as shown by its letter also filed as a part of the bill; that the plaintiff was unable to decide between said conflicting claimants, and while it was ready and anxious to pay the amount appearing to be due from it to Philip N. Nicholas"; as royalties for the time specified, and as the same shall accrue from time to time, to and for the use of the one really entitled," it could not safely make any payment on account thereof, or recognize either of the conflicting claims until the questions involved therein are settled "by some Court of competent jurisdiction"; that while neither of said claimants had instituted suit against the plaintiff for the recovery of said amount now due, yet the plaintiff was apprehensive of suits by them; that the plaintiff had no claim or interest whatever in the said royalties, and that it desired and thereby offered to pay the same into Court. The bill then prayed that the Trustee and Trust Company be required to interplead and adjust their said demands; that they and their attorneys, etc., be restrained from commencing or prosecuting any action or actions at law in respect to said demands, and for further relief, and there was attached to the bill an affidavit that the matters contained in the bill were true as alleged, and that the bill was not filed by the plaintiff in collusion with either of the defendants, but of its own accord for relief, etc.

The lease referred to and filed with the bill, which is dated January 1st, 1900, and purports to have been executed and acknowledged by a number of persons, including Edwin M. Wilmer, Cumberland D. Nicholas, by his attorney in

fact, and George C. Nicholas, committee of the estate of
Philip N. Nicholas, by his attorney in fact, granted to the
plaintiff, the Coal Company, the exclusive right of digging,
mining, carrying away, etc., coal in and from certain tracts
of land in Schuylkill County, Pennsylvania, in which the
grantors or lessors owned certain interests, for the term of
fifteen years, ending on the 31st of December, 1913, in con-
sideration of the covenants therein on the part of the Coal
Company and the payment, monthly, of specified amounts
per ton for each and every ton of coal mined and shipped by
the Coal Company.

The first of the letters from the Trustee to the plaintiff,
filed with the bill and dated July 12th, 1913, after notifying
the plaintiff that by a decree of Circuit Court No. 2 of Bal-
timore City, George C. Nicholas, surviving Trustee of Philip
N. Nicholas under the will of Jane H. Nicholas, deceased,
had been removed and that he had been appointed Trustee in
his place, continues as follows: "All the coal land interests
covered by the estate of Philip N. Nicholas are a part of the
above trust estate, and demand therefor will be made by me
as Trustee for all monthly revenues accruing from said coal
land interests. I beg leave to suggest that you hold any
revenue now due, pending my sending you a certified copy
of the decree of Court." The second letter notified the Coal
Company that he had qualified as Trustee, and that he had
exhibited to the attorney for the Coal Company in Baltimore
a list of the property of said trust estate and submitted to
them his right to demand and receive the revenue from the
coal land interests in Pennsylvania, and the third letter stated
that he had been waiting patiently for a settlement of "the
money due the trust estate of Jane H. Nicholas for the
benefit of Philip N. Nicholas on account of vested interests
in the Dugan tracts of coal lands in Schuylkill County, Penn-
sylvania"; that under the advice of his attorney he had de-
clined to enter into any agreement with the committee of
Philip N. Nicholas, and requested the plaintiff to "promptly"
remit amounts due the said trust estate. The letter referred

to in the bill as containing the demand of the Trust Company
was from its attorney, and was dated December 17th, 1913.
It states, "we hereby make demand on you for one-third of
the rentals of certain coal lands in Pennsylvania held by you
for P. N. Nicholas. As you know, the Baltimore Trust Com-
pany is committee for Nicholas, who has been adjudged a
lunatic, and as such committee is entitled to this proportion.
This matter has been held up for some time and we must
therefore insist upon immediate payment."

The Court below passed an order requiring the defend-
ants to answer the bill, and the plaintiff to pay the $49.93
into Court, and ordered an injunction to issue as prayed.
The Trust Company filed its answer, admitting the allega-
tions of the bill and consenting to the relief prayed. The
Trustee filed his answer on the 24th of January, 1914, in
which he denies the allegations of the first paragraph of the
bill. In reply to the second paragraph of the bill, the answer
says "that he admits that Philip Norbourne Nicholas is an
heir at law of his brother, C. D. Nicholas; that C. D. Nicho-
las died intestate"; that the respondent "believes that said
Philip Norbourne Nicholas is entitled as the heir at law of
his brother to a one-seventy-second share of certain coal lands
in Schuylkill County, Pennsylvania," but that he denies that
Philip Norbourne Nicholas is a lunatic, and also denies all the
other allegations of said paragraph. In answer to the third
paragraph of the bill he claims to be the Trustee of the trust
estate under the will of Jane H. Nicholas of the life estate of
Philip N. Nicholas, but he denies that the Trust Company
is the substituted Committee of Philip N. Nicholas, and
avers that the proceedings under which the Trust Company
"claims its committeeship" are void. In reference to the
fourth paragraph he admits sending the letters referred to,
but neither admits nor denies the alleged demand of the
Trust Company, and denies all other allegations of the fourth
paragraph. He admits "that the questions involved in the
bill" should be settled by some Court of competent jurisdic-
tion, but denies the other averments of the fifth paragraph

WILMER vs. PHILA. & READING C. & I. CO. 605

Md.]                    Opinion of the Court.

of the bill. In answer to the sixth paragraph he admits that
he has not instituted any suit against the plaintiff, and says
he has no knowledge of any suit by the Trust Company, and
that he denies the other allegations of the sixth paragraph.
He neither admits nor denies the averments of the seventh
paragraph, but calls on the plaintiff for full proof.

With his answer the Trustee filed a cross-bill against the
Coal Company and the Trust Company, in which, after set-
ting out the proceedings in this case, he alleges that he is the
duly substituted Trustee under the will of Jane H. Nicholas,
by an order of Circuit Court No. 2 of Baltimore City, which
authorized him to prosecute suits for the recovery of any
property due and belonging to the trust estate; that Jane H.
Nicholas was at the time of her death the owner of an inter-
est in the coal lands referred to; that by her will her prop-
erty was divided into six equal parts, and that one of said
parts devolved upon him as Trustee for the benefit of Philip
N. Nicholas, who is still living, during his natural life; that
he held said interest in the coal lands as tenant in common
with others, and that the land was mined by the Coal Com-
pany without any agreement with him or his predecessor;
that the Coal Company had committed other trespasses on
said land, and that the acts of the Coal Company in mining
under the authority of the lease referred to and committing
other trespasses on said land were "acts of disseisor against"
him; that the Coal Company has mined large quantities of
coal on said land for which it has never accounted to the
plaintiff, and that he is entitled to such an accounting; that
the Trust Company claims the fund to be paid into Court by
virtue "of its alleged committeeship"; that the Trust Com-
pany is not the Committee for Philip N. Nicholas, that the
proceedings under which it was appointed are void, and that
the Trust Company, "under color of its alleged committee-
ship, has wrongfully received and accepted money due" to
him as Trustee. The prayer of the cross-bill is that the Coal
Company may be required to account to the Trustee for his
interest in all coal, etc., taken by it from said lands; that it

606 WILMER vs. PHILA. & READING C. & I. CO.

Opinion of the Court.                          [124

may be enjoined from further trespassing thereon, and that it may be adjudged to pay to the Trustee such damages as may have been sustained by reason of its wrongful acts; that the lunacy proceedings under which the Trust Company claims to have been appointed Committee may be declared void, and that it may be required to account to the Trustee for all moneys wrongfully received by it, etc.

The bill of interpleader and the answers thereto were submitted on the bill and answers, and the Court on the 27th of March, 1914, passed an order requiring the Trustee and the Trust Company to interplead their respective claims, etc. On the same day the Court sustained the demurrers of the Coal Company and Trust Company to the cross-bill, and dismissed the cross-bill without prejudice to the Trustee to "avail himself of such remedies as he might otherwise be entitled to." From these orders the Trustee has appealed.

In 3 *Pomeroy's Equity* (2nd Ed.), sec. 1320, the author says: "When two or more persons, whose titles are connected by reason of one being derived from the other, or both being derived from a common source, claim the same thing, debt or duty, by different or separate interests, from a third, and he, not knowing to which of the claimants he ought of right to render the right or duty, or to deliver the thing, fears he may be hurt by some of them, he may maintain a suit and obtain against them the remedy of interpleader. * * * The object of the suit is, that the conflicting claimants shall litigate the matter among themselves, without involving the stake-holder in their controversy, with which he has no interest. * * * The ground of the jurisdiction is plain. The party seeking the remedy is exposed to the hazard, vexation, and expense of several actions at law for the same demand, while he is ready and willing to satisfy that demand in favor of the claimant who establishes his right thereto." Following the views expressed in *National Park Bank* v. *Lanahan,* 60 Md. 477, Mr. Miller states the ground of jurisdiction as follows: "Jurisdiction in cases of interpleader is founded upon a conflict between two or more persons severally claim-

WILMER vs. PHILA. & READING C. & I. CO.  607

Md.]                    Opinion of the Court.

ing the same debt through separate and different interests, and the person liable to discharge the debt is unable to ascertain which of the claimants is entitled, and he is therefore threatened with two or more suits in respect of a subject matter in which he claims no interest and in regard to which he is an indifferent stake-holder." *Miller's Equity Pro.*, sec. 722; *Emerick* v. *New York Life Ins. Co.*, 49 Md. 352; *Home Life Ins. Co.* v. *Caulk*, 86 Md. 385.  It follows from these statements of the ground of equitable jurisdiction in such cases that to warrant a decree there must be two or more claimants, through separate and different interests and whose titles are connected by being derived one from the other or from a common source, of the same thing or debt, in which the party seeking relief claims no interest and as to which he is an indifferent stake-holder.

The case having been set down for hearing by the plaintiff on the bill and answers, the allegations of pertinent facts, as distinguished from matters of opinion, in the answers must be taken as true, and material averments of the bill denied by the answers, or neither admitted nor denied cannot be considered (*Miller's Equity Pro.*, secs. 255-256), and the appellant contends that as he denied some of the material averments of the bill and neither admitted nor denied others, there was error in the order of the Court below requiring the defendants to interplead.  This contention requires us to determine the effect of the appellant's answer upon the essential averments of the bill.

The first paragraph of the bill, which was denied by the answer, alleges the execution of the lease by the attorney in fact for all the Dugan heirs, while the answer thereto simply denies the averments of that paragraph.  The second paragraph of the bill alleges that the royalties involved represent a part of the interest of only one of the Dugan heirs, viz., C. D. Nicholas, which devolved upon Philip N. Nicholas, as one of his heirs at law.  The answer does not deny that C. D. Nicholas was a party to the lease, and, being in general terms, may be treated as only a denial that it was executed

608  WILMER vs. PHILA. & READING C. & I. CO.

Opinion of the Court.                    [124

by *all* the Dugan heirs, which is entirely immaterial so far as the particular fund involved is concerned. Indeed when the first and second paragraphs of the bill are read in connection with the appellant's answer to these paragraphs and his letters to the plaintiff, which are admitted by the answer, the answer must be regarded as an admission that the fund in possession of the plaintiff arose out of some contract or lease concerning the lands referred to, to which C. D. Nicholas was a party, for the demand made in his letter of July 12th was a demand for "all monthly revenue accruing from said coal land interests." The *monthly* revenues referred to must have had their origin in some contract with the owner of the interest from which they were derived, and if we are permitted to consider the appellant's cross-bill in construing his answer it would seem clear that all his answer to the first paragraph of the bill means is that neither he nor his predecessor executed the lease. Moreover, the royalties referred to in the bill, and which the plaintiff offered to pay into Court, were the royalties alleged to be due for the time stated under the lease in question. The fifth paragraph of the bill alleged that the plaintiff was unable to decide between the claimants of these royalties, and could not safely pay same "until the questions involved in said claims were settled" by the Court, and in answer to this paragraph the appellant admits "that the questions involved in said bill of complaint should be settled authoritatively by some Court of competent jurisdiction." As the questions referred to in the bill were the questions involved in the claims of the defendants to these royalties under the lease, the appellant's answer admitting that these questions should be decided is a substantial admission of these royalties. Having, then, in effect, an admission of the execution of the lease, so far, at least, as C. D. Nicholas is concerned, and that the royalties mentioned in the bill are the royalties due under the lease, the denial in the third paragraph of the answer of "all other allegations" of the second paragraph of the bill must be confined to the *amount* of those royalties. It is said in 23 *Cyc.* 27, upon the

WILMER vs. PHILA. & READING C. & I. CO. 609

Md.]                    Opinion of the Court.

authorities cited in the note, that the amount of the fund in the hands of the plaintiff "must be taken to be as stated by the complainant, and cannot be controverted by the answers for the purpose of having it adjudicated." Of course, if it should be shown that the amount alleged to be due, and which the plaintiff offers to pay into Court, is not in fact the true amount because of improper deductions by the plaintiff from the amount actually due, it may disclose a case in which the plaintiff is not indifferent between the defendants and therefore not entitled to a decree requiring them to interplead. And, too, where it does not otherwise sufficiently appear that the plaintiff is a disinterested stake-holder, a denial of the correctness of the amount of the debt alleged to be due may be sufficient to put him to the proof of his averment in order to show that he is disinterested. *Williams* v. *Matthews,* 47 N. J. Eq. 199, 20 Atl. 261. But in the case at bar the answer does not suggest that the amount stated in the bill is not the correct amount of the royalties due the interests represented by Philip N. Nicholas as the heir at law of O. D. Nicholas for the time specified, and the allegations of the bill and the admissions contained in the answer are sufficient to show that the plaintiff, as to this fund, is a mere stake-holder.

The answer of the Trust Company shows that it made a claim to the fund in the hands of the plaintiff (*Crane* v. *McDonald,* 23 N. E. 991), and the denial of the appellant of the facts upon which the claim of the Trust Company rests, and the averment that the proceedings in which it was appointed Committee are void, are immaterial as relating to matters to be litigated between the defendants. 23 *Cyc.* 27, note 9. It is not necessary "for the plaintiff to decide, at his peril, either close questions of fact or nice questions of law," but it is sufficient if there is "a reasonable doubt as to which claimant the debt belongs." *Crane* v. *McDonald, supra.*

The appellant also contends that the demands of the defendants were not for the same fund. The answer of the Trust Company admits that it claimed the royalties referred to in

the bill, and the letter of the appellant to the plaintiff states that "all the coal land interests covered by the estate of Philip N. Nicholas" are a part of the trust estate which he represents, and that demand would be made by him for "all monthly revenue from said coal land interests." His answer admits that part of the coal land interests of Philip N. Nicholas is the interest he acquired as the heir at law of C. D. Nicholas, and as his demand was for all monthly revenues accruing from Philip N. Nicholas's interest it necessarily included the fund in the hands of the plaintiff.

He further contends that the lease referred to shows that the plaintiff is the tenant of the Trust Company, and that as it is not competent for a tenant to deny his landlord's title, the plaintiff does not stand indifferent between the defendants. If the plaintiff is the tenant of the Trust Company as representing Philip N. Nicholas it is only so as to the interest in the coal lands which devolved upon him as the heir at law of C. D. Nicholas, and any right that the appellant may have to revenues accruing from the same interest must also have been acquired from C. D. Nicholas. The well recognized exception to the rule that a tenant cannot maintain a suit for interpleader against his landlord is where there is privity between his landlord and the opposing claimant, that is, where the title of the other claimant is derived from that of the lessor, or where both defendants claim under the lessor by different titles. In such cases the tenant does not dispute his landlord's title. 3 *Pomeroy's Equity* (2nd Ed.), sec. 1327, note 2, p. 2043.

It is also suggested that the plaintiff is not an indifferent stake-holder because he has paid the revenue since the death of C. D. Nicholas to some one. But the record does not show to whom it was paid, and if it was paid to the Trustee to whose right the appellant succeeded he would have no cause to complain. But apart from that, the bill only refers to the fund in the hands of the plaintiff. It is said in 3 *Pomeroy's Equity* (2nd Ed.), sec. 1325: "The interest, however, which shall defeat the relief must be in the very *thing or fund* itself,

which is the subject matter of the suit," and in a note to that section it is said: "If, therefore, the plaintiff has, with respect to other property not the subject matter of the present suit, an interest that one of the defendants shall succeed, because the decision thus made will be favorable to his own future litigation concerning that other property,—this is no objection to his maintaining a suit for an interpleader."

In respect to the appellant's cross-bill it is only necessary to say that it does not relate to the same subject matter referred to in the Coal Company's bill. The subject matter of the Coal Company's bill is a fund derived from the interest in the coal lands owned by Philip N. Nicholas as one of the heirs at law of C. D. Nicholas, while the cross-bill relates to Philip N. Nicholas's interest in said coal land under the will of Jane H. Nicholas. In *Hooper* v. *Central Trust Co.,* 81 Md. 559, JUDGE McSHERRY, speaking for the Court, said: "It is undoubtedly true that a subject not germane to a pending controversy cannot by means of a cross-bill be injected into the litigation. * * * The cross-bill may set up additional facts not alleged in the original bill where they constitute a part of the same defenses and relate to the same subject matter." See also *Wakeman* v. *Kingsland et al.,* 46 N. J. Eq. 113, 18 Atl. 680, where it is stated in the syllabus; "A defendant in a strict interpleader suit cannot have relief by cross-bill against the complainant." The reason for this rule is manifest. The litigation between the plaintiff and defendant must be confined to the thing or debt in the hands of the plaintiff, and the defendant cannot inject into the litigation a different subject matter.

It follows from what has been said that the decrees of the Court below must be affirmed.

> *Decrees affirmed and case remanded, the costs*
> *in this Court, and the costs of the cross-bill*
> *in the Court below, to be paid by the appel-*
> *lant.*