**PACIFIC MUT. LIFE INS. CO. v. LUSK et al.**

**No. 375.**

District Court, W. D. Louisiana, Monroe Division.

Aug. 15, 1930.

See, also, Lusk v. Pacific Mut. Life Ins. Co., 46 F.(2d) 502.

Outlaw & Kilborn, of Mobile, Ala., for complainant.

Eugene McGivney and Solomon S. Goldman, both of New Orleans, La., and Hudson, Potts, Bernstein & Sholars, of Monroe, La., for respondents.

DAWKINS, District Judge.

Complainant filed this bill of interpleader on March 1, 1930, alleging that it had issued its policy of insurance to one John A. Hurt, which provided for the payment of $200 per month for an indefinite period in case of total disability; that the assured had made claim for disability, commencing on June 20, 1927, and that payment for two months, or $400, had been made; that one L. J. Knox, a resident of Alabama, claiming to be a judgment creditor of said Hurt, had filed in the circuit court of Mobile county, Ala., a garnishment proceeding against complainant, claiming the sum of $1,798.12, which was served on October 7, 1927; that the superintendent of banks for Alabama, claiming to be a judgment creditor of Hurt, for the sum of $5,335.51, had also filed garnishment proceedings against complainant, in which service was made August 3, 1928; that the Mobile National Bank had instituted similar garnishment proceedings against it on an alleged judgment for $1,400 against Hurt, which was served on October 2, 1928; and that S. H. Sylvester, also a citizen of Alabama, likewise sued out garnishment proceedings against it on an alleged judgment for the sum of $1,313.55, as to which service was made upon complainant on May 13, 1929; further, that all of said creditors had attempted to seize the proceeds of the policy in its hands belonging to the said Hurt.

Complainant further alleged that one Jesse Lusk, a citizen of Louisiana, had filed suit in the state court for West Carroll parish, on January 14, 1929, claiming the entire proceeds of said policy under an alleged assignment purporting to have been executed on December 29, 1927, of which he gave petitioner notice on January 4, 1928, and was apparently a bona fide claimant therefor, said suit claiming the benefits of said policy "since the date of the assignment, to-wit: December 29, 1927, at the rate of $200.00 per month," and that complainant had removed said suit to this court, where it is now pending. 46 F.(2d) 502. Complainant further alleged that, in view of the above, "there are two or more adverse and apparently bona fide claimants, citizens of different states, to the funds or to some portion thereof, hereinafter admitted to be due under said policy."

Complainant further alleged as follows:

"12. Complainant admits that the said assured was disabled within the provisions of the said policy from June 20, 1927 up to Jan. 14, 1929, and that the total of said disability benefits accrued up to said date (less $400.00 of disability benefits paid to the assured by Complainant for the months of July and August 1927) amount to $3,273.32, which amount your complainant has been ready, willing and anxious to pay to the person legally entitled to receive the same but because of the said conflicting claims made upon the said funds by the said assignee and the said creditors, your Complainant cannot determine with safety to itself to whom the said funds should be paid; that Complainant has no means of ascertaining definitely the facts or merits of the several conflicting claims arising in the said litigation and of the said assignment which are relied upon by the aforesaid claimants as the foundation of their respective claims; that it cannot pay over the money due to any one or more of the said claimants without taking upon itself the responsibility of determining the doubtful questions of law and of fact arising out of the said transactions and without incurring the risk of being subjected to great costs and expense in defending itself in a multiplicity of suits and to a possible double payment of the amount due if it should finally appear that Complainant had wrongfully determined in favor of one such claimant at the expense of the others.

"13. Complainant alleges that it does not in any respect collude with any of said claimants touching the matters in question in this action and it has not asked, and does not ask, this relief or any relief herein at the request of any of the said claimants, but solely of its own free will and to avoid being molested and injured touching the matters herein set forth.

"14. That under the Act of Congress of May 8th, 1926, c. 273, sections 1–3, 44 Stat. 416, in such cases it is provided that your Complainant may deposit the funds admitted to be due under the said policy in the Registry of the Court and that the respective claimants may be required to interplead their rights against the said funds in such proceedings; and that this Court has jurisdiction of this proceeding by reason of the claim of the said Jesse Lusk a citizen of the State of Louisiana, residing at Epps in the Western District of Louisiana.

"15. That your Complainant tenders herewith the sum of Three Thousand Two

Hundred and seventy three and 32/100 ($3,-273.32) Dollars, being the amount due under the said policy, to be deposited in the Registry of this Court to abide the judgment of the Court and that your Complainant is entitled to be discharged from further liability upon the aforesaid policy and to its actual court costs and its reasonable attorney's fees, to be fixed by the Court."

Petitioner, purporting to act under the provisions of the Act of Congress of May 8, 1926 (28 USCA § 41(26), deposited the amount admitted to be due, to wit, $3,273.32, in the registry of this court to abide its judgment, prayed for a preliminary injunction against further proceedings in the suits by creditors in the state court of Alabama; that they, together with Lusk, be cited to appear and answer the bill, and that the rights of the several claimants to said funds as between themselves be determined by this court; further, that complainant recover its actual costs and reasonable attorney's fees, for general and equitable relief.

The Alabama creditors appeared and moved to dismiss the bill of complaint on the grounds that this court was without jurisdiction because complainant had not deposited "the full amount of the insurance or disability benefits which at the time of the filing of the bill of complaint herein had accrued and became due and payable," in that the total disability of Hurt, which commenced on June 20, 1927, "has continued ever since, and that proofs of said disability as required by the terms of said policy, were made by the said John A. Hurt, prior to the filing of the bill in this complaint, covering the period of from January 14, 1929, to to-wit, Feb. 1, 1930"; that there has accrued "$2,600.00 more than the sum admitted to be due, and that further benefits will become due and payable so long as the assured remains totally disabled"; that it was a condition precedent that the complainant should have deposited all that was due, and it cannot dispute or litigate in this proceeding its liability for any part of said disability benefits; further, that complainant does not come into court "with clean hands," but has committed a fraud and breach of good faith against respondents; that their several suits had been filed and served as alleged in the bill and as set forth hereinabove, and complainant, as defendant therein, was required to make its answers thereto within thirty days under the law of Alabama, for which purpose it had employed attorneys in said state; that the attorneys for respondents, creditors herein, at the special request of the attorneys for said insurance company, consented to have the time extended for filing said answers for various periods, upon the assurance that the same would be filed just as soon as the case of L. J. Knox against complainant was decided by the Supreme Court of Alabama (see 220 Ala. 448, 126 So. 110); that respondents agreed to withhold action in said proceedings pending the determination of said cause, "and thereupon it was then and there expressly understood and agreed between" the adjuster of the insurance company and the attorney for respondents "that, in consideration of respondents further deferring action for failure to make answer to said writs of garnishment," the said adjuster would immediately notify the Louisiana attorney not to take any steps in any of the United States courts in Louisiana, toward the filing of an interpleader proceeding, pending the adjuster's visit to Epps, La., to see Lusk, and before any such action was taken the attorneys for respondents would be notified and given opportunity to get the proceedings under way in Alabama, that is to say, to require the filing "by the complainant of its answers to said garnishments, so that on the coming in of said answers, and the suggestion by said insurance company of Jesse Lusk as a claimant to the benefit payable under said policy, the said judgment creditors would take steps under the laws of Alabama to cite the said Jesse Lusk to appear in said Circuit Court and litigate with said creditors his claims to the benefits or proceeds of said policy."

Respondents further alleged as follows: "And these respondents now allege that after the making of said agreement by the said Chief Claims Adjuster, on behalf of the Pacific Mutual Life Insurance Company, and in violation thereof, and in breach of good faith and honorable conduct, the Pacific Mutual Life Insurance Company filed this present suit, without giving any notice whatever to these respondents or their attorneys of its purpose to do so, or of its purpose to violate the said solemn agreement, and these respondents say that they had no notice or knowledge that the said insurance company intended to file this suit, in violation of said agreement, or that it had filed the same, until process was served upon them on the bill filed in this cause."

Respondents also alleged that this court was without jurisdiction for the reason that prior to the filing of this suit the circuit court of Alabama had, in the garnishment suits mentioned, obtained full and complete jurisdiction "over the matters and things involved

in this entire suit, and over the funds paid into the registry of this court, * * * " and complainant could, through the processes afforded by the laws of Alabama, implead Lusk and all other claimants to said funds in the courts of that state in the garnishment proceedings, and thus have determined and settled "the controversy over the funds paid into this court and payable under said policy."

Respondent L. J. Knox further alleged that, in his garnishment suit in the state court of Alabama, complainant herein admitted that it owed the said Hurt $200 for each and every month since the beginning of his disability and would continue to become liable for that amount each month "if said defendant should be totally disabled within the meaning of said policy and due proof of said disability be filed with the insurance company," and that a judgment for $1,600 had been taken in favor of Knox, covering the amount due up to that time; that on January 30, 1928, complainant filed in said suit of Knox a "supplemental answer * * * and set up therein for the first time that it had been notified of the assignment of said policy to said Jesse Lusk"; that on October 28, 1928, complainant filed in said case a motion to vacate said judgment and in said motion "stated that it 'is ready, able and willing to pay into court (meaning said circuit court) all moneys now due by it under said policy issued to said J. A. Hurt, and will pay such sum into court just as soon as the judgment of condemnation heretofore taken against it has been set aside'; and that the question of whether or not the said Lusk is entitled to seek benefits under the policy in question should be passed upon by the court (meaning said circuit court) and for the protection of said garnishee against any claim by the said Lusk, it is absolutely essential that said Lusk be notified of said garnishment proceeding and be given an opportunity to propound whatever claim, if any, he might have to the funds admittedly owing by said garnishee under the sick benefit clause of the said policy;" further, that the case was decided by the Circuit Court and appealed to the Supreme Court (see 220 Ala. 448, 126 So. 110), where the judgment was reversed, but, despite its promise to pay said funds into said circuit court, it has never done so, but, on the contrary, since the filing of this interpleader suit it has filed in said circuit court a plea "setting up in substance that because of this suit the said circuit court has no right, power or authority to further proceed in said cause." Respond-

ent alleged that "because of the matters and things which have transpired in his said suit in the circuit court of Mobile county, complainant is estopped to prosecute this present suit and the Circuit Court has jurisdiction and should be allowed to proceed in his said suit."

Respondent further alleged that the circuit court of Alabama has full power and authority, both at law and in equity, to determine all of the issues between respondent and the said Lusk; that it had acquired the said jurisdiction before the present suit was filed, and that on principles of comity it should not be interfered with in the manner attempted by this interpleader proceeding; further, that complainant has not sought by its bill or otherwise, to restrain Lusk from prosecuting his suit, and that in equity no injunction should issue against respondents, claimants to the said funds.

Respondents prayed that the bill of complaint be dismissed and for equitable relief.

Respondent Lusk appeared and moved to dismiss the bill upon the ground that "complainant has no right to interplead and deposit funds in the court as set forth in its bill," and in the alternative that it was guilty of laches.

On the hearing, both the prayer for preliminary injunction and the motion to dismiss on the part of the Alabama creditors were tried and submitted upon affidavits, which substantially support the allegations of respondents with respect to the proceedings in Alabama, and the status of the insurance policy. In fact, in the brief filed herein, attorneys for complainant concede that the question of whether or not payments upon the policy will be made beyond the date for which it admits liability, has not been determined.

The first question with which we are confronted is the contention that complainant has not confessed its complete liability under the policy, but only admits that it owes for the disability benefits at the rate of $200 per month from June 20, 1927, to January 14, 1929; whereas its bill, which was filed on March 1, 1930, discloses that it may owe and continue to become indebted for the further sum of $200 per month so long as the disability of the insured, J. A. Hurt, continues. There is nothing alleged in the bill to show that its liability has ended, but perfectly apparent that there will arise between it and the claimants an issue of whether or not it shall pay the sum of $2,600 to cover the

time between January 14, 1929, and March 1, 1930, when the bill was filed, as well as for the time which has elapsed since the filing of the petition herein. In other words, the bill does not on its face disclose that the complainant is wholly without interest in the subject-matter over which it seeks the jurisdiction of this court under the Interpleader Act, or that any judgment which it may render as between the insurer and the claimants would be final.

▉▉▉ The interpleader statute, as well as the general principles underlying such equitable relief, contemplate that, where one is in possession of property or funds which is claimed by two or more persons, and to which the possessor lays no claim of his own, he may deposit the funds or property in court and bring the several claimants into one forum to contest their rights thereto, and thereby relieve himself from any further responsibility. Such remedy is, for reasons founded in equity, accorded to a mere stakeholder for the purpose of relieving him or it from the vexation of a multiplicity of suits and to be discharged from liability arising out of conflicting claims to the same thing or fund. It was not intended to permit a court of equity to decide issues of fact and law arising between the interpleader and those asserting claims to the property or funds in dispute. Such an action would involve a case at common law with the right to a jury trial, etc., which a court of equity is not competent to afford. C. J. vol. 33, pp. 437, 451, 461, verbo "Interpleader," § 52; Williams v. Matthews (N. J. Chancery, Aug. 5, 1890) 47 N. J. Eq. 196, 20 A. 261; Wilmer v. Philadelphia & Reading Coal & Iron Co., 124 Md. 599, 93 A. 157.

▉▉▉ It appears to have been the rule always that in a strict interpleader suit, as distinguished from a proceeding in the nature of interpleader, the complainant must be an entirely disinterested party, a mere stakeholder without interest in the subject-matter, property, or funds, claimed adversely by the respondents. C. J. vol. 33, p. 435 et seq., verbo "Interpleader," § 19, and authorities cited in footnotes. An action in the nature of interpleader may be provoked by one who has an equitable interest in the subject-matter, such as a court of equity may determine, where the jurisdiction over the claimants is such as to permit a full determination. However, I think it clear that the present case cannot be treated as such, for the very good reason that the jurisdiction given over residents of different states is strictly statutory, and the language of the act plainly indicates that it was to be an interpleader proceeding, strictly speaking. Subsection 26 of section 41, title 28, U. S. Code, 28 USCA § 41 (26), gives jurisdiction to the federal District Courts:

"Of suits in equity begun by *bills of interpleader* * * * filed by any insurance company * * * " between "two or more adverse claimants, citizens of different States * * *; that such company * * * has paid the amount thereof into the registry of the court, there to abide the judgment of the court. * * *

"Said courts shall hear and determine the cause and shall *discharge the complainant from further liability;* and *shall make the injunction permanent.* * * * " (Italics by the writer.)

In the case of Killian v. Ebbinghaus, 110 U. S. page 571, 4 S. Ct. 232, 233, 28 L. Ed. 246, the Supreme Court has said: "In such a bill it is necessary *to aver* that the complainant has no interest in the subject-matter of the suit; he must admit title in the claimants and aver that he is indifferent between them, and he cannot seek relief in the premises against either of them"—citing numerous authorities. (Italics by the writer.)

My opinion is that, in order to vest this court with jurisdiction, the complainant must either confess its entire liability under the policy for all that has accrued, or it must first have that issue determined in a competent law court before it can implead the respondents under the statute.