## MUTUAL LIFE INS. CO. OF NEW YORK v. LOTT et al.

(District Court, S. D. California, S. D. August 22, 1921.)

No. E-63.

1. **Courts ⊗⇒307(2)—Interpleader statute does not give District Court jurisdiction of a citizen of District of Columbia.**

   Act Feb. 22, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 991a), providing that District Courts shall have cognizance of suits in equity begun by bills of interpleader, when filed by an insurance company, alleging that each of two or more persons, citizens of different states, claims to be the beneficiary under an accrued policy, such suit to be brought in the district of the residence of one of the claimants, does not give a District court jurisdiction of such a suit where one of the claimants is a resident and citizen of the District of Columbia.

2. **Courts ⊗⇒307(2)—District of Columbia is not a "state" within section 1 of article 3 of the Constitution.**

   The District of Columbia is not a state within section 2, article 3, of the Constitution, conferring upon federal courts the jurisdiction of controversies "between citizens of different states."

   [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, State.]

⊗⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Suit of interpleader by the Mutual Life Insurance Company of New York against Alice A. Lott and others. On motions to dismiss bill. Motions granted.

Phelps & Winston and Chas. C. Montgomery, all of Los Angeles, Cal., for plaintiff.

Carnahan & Clark, of Los Angeles, Cal., for defendants.

BLEDSOE, District Judge. Plaintiff above named, by a bill in interpleader framed in keeping with the requirements of the act of Congress quoted in the margin (Act Feb. 22, 1917, § 991a [Comp. St. 1918, Comp. St. Ann. Supp. 1919]),[1] alleges that on the 13th day of February, 1882, it issued an insurance policy on the life of one Eugene W. Wilcox, "payable to his wife, Alice A. Wilcox, if living, and, if not living, to their children"; that the said insured died on the 6th day of January, 1920, leaving him surviving the said wife, now named Alice A. Lott, together with four children, constituting the other defendants impleaded herein. It is also made to appear that a final decree of divorce was granted the said insured on the 3d day of May, 1912; that thereafter certain proceedings were had in the Supreme Court of the state of New York "In the matter of the petition of Eugene W. Wilcox, of the Village of Albion, Orleans county, N. Y., to substitute beneficiaries in life insurance policies," whereby an order was made and entered in the office of the clerk of the county of Orleans directing that the aforesaid four children be "substituted as beneficiaries under the said policy issued by the plaintiff upon the life of Eugene W. Wilcox, as hereinbefore set forth, in place and stead of Alice A. Wilcox, the

[1] The District Courts of the United States shall have original cognizance to entertain suits in equity, begun by bills of interpleader where the same are filed by any insurance company or fraternal beneficiary society, duly verified, and where it is made to appear by such bill that one or more persons, being bona fide claimants against such company or society, reside within the jurisdiction of said court; that such company or society has made or issued some policy of insurance or certificate of membership providing for the payment of a sum of money of at least $500 as insurance or benefits to a beneficiary or beneficiaries or to the heirs, next of kin, or legal representative of the person insured or member; that two or more adverse claimants, citizens of different states, are claiming or may claim to be entitled to such insurance or benefits and that such company or society deposits the amount of such insurance or benefits with the clerk of said court and abides the judgment of said court. In all such cases the court shall have the power to issue its process for said claimants, returnable at such time as the said court or a judge thereof shall determine, which shall be addressed to and served by the United States marshals for the respective districts wherein said claimants reside or may be found; to hear said bill of interpleader and decide thereon according to the practice in equity; to discharge said complainant from further liability upon the payment of said insurance or benefit as directed by the court, less complainant's actual court costs; and shall have the power to make such orders and decrees as may be suitable and proper and to issue the necessary writs usual and customary in such cases for the purpose of carrying out such orders and decrees: Provided, that in all cases where a beneficiary or beneficiaries are named in the policy of insurance or certificate of membership or where the same has been assigned and written notice thereof shall have been given to the insurance company or fraternal benefit society, the bill of interpleader shall be filed in the district where the beneficiary or beneficiaries may reside.

beneficiary in said policy named." It is then alleged that the defendant Alice A. Lott, formerly said Alice A. Wilcox, the named beneficiary in said policy, "disputes the legality of the proceedings taken as aforesaid in the Supreme Court of the state of New York in and for the county of Orleans, wherein the last-mentioned order was made and entered purporting to change the beneficiaries in said policy of insurance, and that she alleges that said order had no legal force or effect, and that she further claims that she is still the legal beneficiary in said policy of insurance and entitled to the entire proceeds thereof."

It is then alleged that the four children, the substituted beneficiaries above named, "have filed with the plaintiff proof of the death of the said Eugene W. Wilcox and claim to be entitled to receive in equal shares the entire proceeds of the said policy as the children of the said deceased," and also that "the defendant Alice A. Lott has filed with the plaintiff her claim and claims to be entitled to receive the entire proceeds of said policy as the beneficiary named in the said policy." Plaintiff sets forth the amount due under the terms of the policy, and alleges that it occupies the position of a mere stakeholder in the premises, etc., and, having deposited the amount due upon the policy in court, desires to be relieved of all responsibility upon a determination being had as to the parties entitled thereto, etc.

With respect to the citizenship of the parties involved, it is alleged that the plaintiff is a citizen and resident of the state of New York; that defendant Alice A. Lott, the named beneficiary, is a citizen and resident of the state of California residing at Los Angeles; that the children, Eugene W. Wilcox, Jr., Blanche Beedon, and Mable A. Davis, are citizens and residents of the state of New York; and that "the defendant Hazel E. Loftin is a citizen and resident of the District of Columbia, residing at the city of Washington in said district." Service of process being had upon the defendants named, pursuant to an order of the court directing the issuance of a subpoena, etc., the New York defendants, Eugene W. Wilcox, Jr., Blanche Beedon and Mable A. Davis, move to dismiss the bill of complaint on the ground of want of jurisdiction of the court, and the District of Columbia defendant, Hazel E. Loftin, appearing separately, makes a similar motion. The only matter involved is as to the jurisdiction of this court to entertain the bill under and pursuant to the terms and provisions of the Constitution and of the special interpleader statute quoted. Stated in another form, the legal proposition presented is: May the District Court of the United States take cognizance of a bill in interpleader, filed pursuant to the special statute quoted, in a case in which one of the defendants named therein, and asserted to be a claimant of an aliquot part of the insurance, is a citizen of the District of Columbia?

[1, 2] The jurisdiction of the subordinate federal courts is determined fundamentally of course by the federal Constitution, and secondarily by the provisions of congressional legislation conferring such jurisdiction. They can have no jurisdiction wider than that permitted them by the Constitution; they can assert no jurisdiction other than that expressly granted to them by appropriate congressional enactment,

Sewing Machine Cases, 18 Wall. 553, 577, 21 L. Ed. 914. By section 2 of article 3 of the Constitution, jurisdiction of controversies "between citizens of different states" is conferred upon federal courts. From a very early day in our government it has been held and consistently adhered to that, within the meaning of this provision, the District of Columbia is not a state, and that, where diverse citizenship is relied on as a jurisdictional requisite, a citizen of the District is not one capable of suing or being sued in the United States District Court. Hepburn & Dundas v. Ellzey, 2 Cranch, 445, 2 L. Ed. 332; Hooe, Jr., v. Jamieson, 166 U. S. 395, 17 Sup. Ct. 596, 41 L. Ed. 1049; Barney v. Baltimore City, 6 Wall. 280, 18 L. Ed. 825; Wescott v. Fairfield Tp., Fed. Cas. No. 17,418; Seddon v. Virginia T. & C. S. & I. Co. (C. C.) 36 Fed. 6, 1 L. R. A. 108. If, therefore, this cause exhibited only a controversy between the defendant Loftin and another, it would doubtless be conceded that, under the decisions, jurisdiction was lacking. Plaintiff insists, however, that there is a subsisting and substantial controversy between those who are admittedly capable of suing and of being sued herein, and that in consequence the court should entertain jurisdiction of the whole controversy and all of its incidents, etc.

Possessing an antiquity comparable to that of the holding adverted to above, it has been determined by the Supreme Court of the United States and followed in numberless cases that, with respect to the jurisdiction of the federal courts in controversies "between citizens of different states," where the interest in the subject-matter is joint, and not separable, or even where the parties sue or are sued jointly, if there are several coplaintiffs, each plaintiff must be competent to sue in the federal court, and, if there are several codefendants, each defendant must be liable to be sued therein, or else the jurisdictional requirement is lacking. Strawbridge v. Curtiss, 3 Cranch, 267, 2 L. Ed. 435; New Orleans v. Winter, 1 Wheat. 91, 4 L. Ed. 44; Sewing Machine Cases, 18 Wall. 553, 21 L. Ed. 914; Coal Co. v. Blatchford, 11 Wall. 172, 20 L. Ed. 179; Merchants' Cotton Press & S. Co., v. Insurance Co. of North America, 151 U. S. 368, 14 Sup. Ct. 367, 38 L. Ed. 195; The Removal Cases, 100 U. S. 457, 468, 25 L. Ed. 593; Blake v. McKim, 103 U. S. 336, 26 L. Ed. 563; Saginaw Gaslight Co. v. City Saginaw (C. C.) 28 Fed. 529; Gage v. Riverside Trust Co. (C. C.) 156 Fed. 1002, 1007. Giving due countenance to this rule, it cannot be otherwise than that this court is without jurisdiction herein, in that, diverse citizenship being relied on to confer jurisdiction, one of the indispensable parties to the cause, defendant Loftin, is a citizen of the District of Columbia, and not capable of suing or being sued in this court. The defendant Loftin, according to the allegations of the bill, claims a one-fourth part of the insurance. The defendant Lott claims it all. There can be no binding adjudication of the latter's claim without the presence of the former. She is an indispensable party, if justice is to be done. Shields v. Barrow, 17 How. 130, 15 L. Ed. 158. In any event, plaintiff evinces no disposition to consider her as a formal or unnecessary party, and no discontinuance as to her has been suggested. Hooe, Jr.,

v. Jamieson, supra; Hooe, Jr., v. Werner, 166 U. S. 399, 17 Sup. Ct. 994, 41 L. Ed. 1051.

Plaintiff contends, however, that the rulings mentioned are not determinative herein, in that the special statute involved, being highly remedial in its nature, should be construed most liberally to effectuate the end in view, and that, if there be any controversy at all involving "citizens of different states," this court should assume jurisdiction, even though it should happen that there are other parties to that controversy who are not capable of suing or being sued in this court. I have no doubt but that, subject to the controlling provision of the Constitution, Congress may materially widen and enlarge the jurisdiction now or heretofore actually vested in the federal Courts. U. S. v. U. P. R. R. Co., 98 U. S. 569, 604, 25 L. Ed. 143. I have no doubt but that the particular statute here under consideration should be given a liberal construction, in aid of the remedy therein sought to be applied; nevertheless I cannot bring myself to the belief that there was a disposition or intent on the part of Congress, in enacting the statute in question, and using the language which it did, to depart from or impinge upon the rulings theretofore rendered by the federal courts, cited hereinabove, fixing and determining the jurisdiction of those courts in so far as the citizenship of the respective parties was concerned. It will be presumed, of course, that the statute was passed with those rulings in mind. Blake v. McKim, supra. 103 U. S. 339, 26 L. Ed. 563. It is to be observed that the only basis for the assertion of federal jurisdiction mentioned in the statute is that contained in the fact, which must be made to appear from the allegations of the verified bill, "that two or more adverse claimants, citizens of different states, are claiming or may claim to be entitled to such insurance or benefits." The jurisdictional element herein is obviously based upon asserted diversity of citizenship. The provision in the statute relating to it is exactly in the language of the Constitution, and is not dissimilar, in any substantial attribute, from that contained in other congressional enactments heretofore passed upon, and in which it has been repeatedly held that in suits based on diverse citizenship all of the necessary parties to the controversy on either side must possess the requisite qualifications. Coal Co. v. Blatchford, supra. In the Removal Cases, supra, the construction hereinabove referred to was maintained by the court in the face of spirited and insistent dissent therefrom voiced by Justices Bradley and Swayne. There the statute conferring jurisdiction (18 Stat. 470) purported to do so in regard to "any suit of a civil nature * * * in which there shall be a controversy between citizens of different states," and the dissenting justices in that case expressed at length their conclusions to the effect that the Constitution and the statute, written in similar language, should be construed to the effect that a controversy within the jurisdiction of the federal court exists "when any of the parties on one side thereof are citizens of a different state or states from that of which any of the parties on the other side are citizens; in other words, a controversy may be at the same time both a controversy between citizens of the same state and between

citizens of different states. But the fact that it is both does not take away the federal jurisdiction." In Blake v. McKim, supra, decided subsequent to the Removal Cases, supra, and with the contention voiced by the dissent therein in mind, the Supreme Court approved the ruling of the majority as expressed in that case, and also reaffirmed the ruling in the Sewing Machine Cases, supra. Mr. Justice Harlan said (103 U. S. 338, 26 L. Ed. 563):

"The contention upon the part of counsel for the executors is that the suit is removable upon their joint petition, under the first clause of that section. We are unable to concur in that view. There is, undoubtedly, some ground for such a construction, but we are not satisfied that Congress intended to enlarge the jurisdiction of the Circuit Courts to the extent which that construction would imply. The principal reason assigned in its support is that the clause follows the words of the Constitution, when giving jurisdiction to the Circuit Court of a suit in which there shall be 'a controversy between citizens of different States'—language which, it is claimed, does not necessarily require that such controversy must be wholly between citizens of different states. But that consideration was pressed upon our attention in the Case of the Sewing Machine Companies (18 Wall. 553), which arose under Act March 2, 1867, c. 196. 14 Stat, 558. * * * The argument there, by counsel of recognized learning and ability, was that a controversy between citizens of different states is none the less a controversy between citizens of different states because others are also parties to it; that to confine the federal jurisdiction to cases wherein the controversy is between citizens of different states exclusively is to interpolate into the Constitution a word not placed there by those who ordained it, and materially limiting or controlling its express provisions. We declined to adopt that construction. * * *

"It is to be presumed that Congress, in enacting the statute of 1875, had in view as well the previous enactments regulating the removal of causes from the state courts as the decisions of this court upon them. If it was thereby intended to invest the Circuit Courts with jurisdiction of all controversies between citizens of different states, although others might be indispensable parties thereto, such intention would have been expressed in more explicit language. We are not disposed to enlarge that jurisdiction by mere construction. We are of opinion that Congress, in determining the jurisdiction of the Circuit Courts over controversies between citizens of different states, has not distinctly provided for the removal from a state court of a suit in which there is a controversy not wholly between citizens of different states."

Obviously the same principles applicable to the right on removal attach when the jurisdiction of this court is sought in the first instance. In the Sewing Machine Cases, supra, adverted to by Mr. Justice Harlan, the Supreme Court expressed its actual disapproval of the reason and conclusions voiced by the Circuit Court for the District of Massachusetts in the case of Florence Sewing Machine Co. v. Grover & Baker Sewing Machine Co., Fed. Cas. No. 4,883, where it had been held that jurisdiction in the federal court will lie if there be any sort of a controversy involved between citizens of different states, even though as an integral part thereof there be a controversy submitted and to be decided between those who are not citizens of different states.

Some point is made that the language of the interpleader statute itself is demonstrative of an intention on the part of Congress to enlarge jurisdiction to the extent contended for, but I fail to gather such intention from a consideration of that language. If the statute had said that a bill of interpleader should lie where it was made to appear that "adverse claimants, two or more of whom are citizens of different

states, are claiming," etc., then, without question, the construction contended for by plaintiff would be much more persuasive. However, the language actually used is different in intent, and moreover is, as above stated, exactly the same in its essential attributes as the language used in other statutes which have been uniformly construed by the highest court in the land adversely to plaintiff's contention. The ruling requiring all the parties on one side of a controversy to be citizens of different states from all of those on the other side has received such support in that court that it was at one time the holding therein that a corporation, being then considered merely an aggregation, might sue or be sued in the federal court only in the event that all of its members or shareholders were citizens of a state different from that of the plaintiff or defendant, as the case might be. Com. & R. R. Bank of Vicksburg v. Slocomb, Richards & Co., 14 Pet. 60, 10 L. Ed. 354.

In Toland v. Sprague, 12 Pet. 300, 328, 9 L. Ed. 1093, it was held that Congress might have authorized civil process to issue from any Circuit Court of the United States to run into any state of the Union, but that it has not done so; in consequence, service of process in a suit against a nonresident of the state where the suit was brought would not suffice to give the court jurisdiction. This rule was followed in Herndon v. Ridgway, 17 How. 424, 15 L. Ed. 100, where plaintiff filed a bill in interpleader which was dismissed for want of jurisdiction over defendants named therein, they being residents of another state.

This situation, together with the fact that in controversies between contending claimants as to who should receive the fruits of an insurance policy double liability, or at least double litigation, might be imposed upon the insurance company, doubtless served to bring about the enactment of the remedial statute involved herein. The report of the judiciary committee tendering the act in question to the Senate (Senate Report No. 660. Serial 6899, vol. 3, First Session, 64th Congress, 1915–1916) said:

"This bill makes it possible for an insurance company to file its bill in interpleader in the jurisdiction in which one of the claimants resides. The court in which the bill is filed can then issue process to bring in the other claimant. * * * The bill seeks to cure an evil. The evil is the inability of the holder of the fund, which is claimed by diverse claimants, who reside in different states, to obtain proper relief in a tribunal having jurisdiction over all such claimants. Under the present judicial system, there is no such tribunal, and therefore no relief to the holder of such fund."

This report of the committee responsible for the presentation of the bill to the Senate of the United States, which may be looked to in a case involving ambiguity as to the precise intention of Congress, demonstrates clearly to my mind that in the enactment of the legislation here in question Congress had no intention to enlarge the jurisdiction of the federal courts so that those not liable to be sued therein might be sued merely because they were involved in a claim regarding the fruits of an insurance policy. Quite to the contrary, the intention of Congress, as made apparent in the report just quoted, was merely to correct a manifest procedural injustice, sometimes arising in such controversies, and enable a court to assert jurisdiction over all proper

defendants, even though one or more of them might not be a citizen or resident of the state in which the court was held. It is unnecessary to speculate as to what would be the effect of the statute, or the proper conclusion of the court, were the defendant Loftin a citizen of California, of the same state as defendant Lott, to whom she stands opposed in the real controversy embraced in the litigation. It will suffice to suggest that much of plaintiff's argument would be more apposite were it addressed to that particular state of facts.

The point is also made that in any event the court possesses jurisdiction to determine the status of the fund herein, to wit, the money due on the insurance policy, being the money which was deposited with the court by the plaintiff upon the filing of its bill. This fund, however, did not come into the possession of the court through any act other than the voluntary act of the plaintiff itself. None of the defendants requested or consented to such deposit. It would therefore be more than mere novelty to hold that, the court otherwise lacking jurisdiction, the plaintiff could confer jurisdiction on this court to determine plaintiff's true obligation, in the face of antagonistic claims, merely by depositing the amount of its admitted liability with this court. Under that theory plaintiff could confer jurisdiction on any court by depositing the fund in that court, and in such event the statute would be entirely useless and unnecessary. The truth is that, unless this court possesses ample jurisdiction in the premises, there is no "fund" in the sense in which that word is used in applicable decisions. The New York claimants of the moneys due under the policy are not particularly interested in the identical money on deposit in this court. Their claim is against the insurance company, and in the absence of appropriate action, under the statute in question or otherwise, they may sue the insurance company wherever they may find it; and unless they are lawfully brought before this court, in a case of which it has jurisdiction, they are not to be precluded from asserting their claim against the company merely because of its voluntary deposit of a portion of its assets herein. Besides, the language of the statute shows that it was not the intention of Congress that the court where the fund was deposited should have jurisdiction, but that the court where the named beneficiary resided should be the one which should possess jurisdiction to receive the fund and adjudicate the entire controversy. In other words, jurisdiction determines deposit, not deposit jurisdiction.

The controversy here is not between the insurance company and the claimants. If so, the court obviously would be without jurisdiction because some of the claimants are citizens of New York, of the same state of which plaintiff itself is a citizen. Disregarding the formal and looking to the substantial alignment of the parties (Harter Tp. v. Kernochan, 103 U. S. 562, 567, 26 L. Ed. 411), the real and seemingly only controversy in the case is between the claimants; between Mrs. Lott, who claims the entire insurance as the named beneficiary, and the four children, who claim the money because of the fact that they have been substituted as beneficiaries by a proceeding which they assert to be lawful and binding upon Mrs. Lott and the insurance company.

In this controversy, diversity of citizenship being necessary to confer jurisdiction, it being clear that one of the indispensable parties is a citizen of the District of Columbia, and therefore having no right to sue and not being capable of being sued in the United States District Court, I must hold in consequence that this court is without jurisdiction of the controversy thus presented.

The several motions to dismiss are granted.