### SIMMONS TRANSP. CO. v. ALPHA PORTLAND CEMENT CO.

### SAME v. AMERICAN UNION LINE.

(District Court, S. D. New York. December 12, 1922.)

1. **Shipping ⬅177—Lighter entitled to demurrage only for actual delay.**

   In libel by lighter owners for damages for delay caused by unreadiness of shipping company to receive cargo, in the absence of contract on the subject of demurrage, the lighterage company could only claim damage for the running days from the agreed date of delivery until room was available on the pier to receive the cargo.

2. **Shipping ⬅118—Difficulty and expense of procuring tugs during strike does not excuse lighter's breach of contract.**

   Where, during a strike of tugboatmen, it was difficult and expensive to procure tugs, nevertheless libelant lighterage company was not excused from carrying out its agreement to deliver cement at pier when shipping company was ready to receive it, where the evidence showed it was possible to procure tugs, and no effort made by libelant to do so.

3. **Shipping ⬅177—Shipper not liable for delay to chartered lighters caused by others.**

   In the absence of an agreement to the contrary, a shipper by lighters to a steamer was not liable for any delay caused by the steamer or her owners in failing to have the vessel ready to receive cargo or to provide room on the pier to receive such cargo.

4. **Shipping ⬅54—Shipper not liable for damage to chartered lighters over which it had no control.**

   A shipper by chartered lighters to a steamer, having no control over the lighters and merely contracting for their carrying capacity, is not responsible for any damages to the boats.

5. **Admiralty ⬅1—Courts have no jurisdiction to give equitable relief against mistake.**

   Courts of admiralty have no jurisdiction to give affirmative relief against mistakes of law or fact, though they proceed on equitable principles.

6. **Admiralty ⬅12—No jurisdiction to grant relief for fraud.**

   A court of admiralty has no jurisdiction to give relief to a lighterage company for false and fraudulent representations by the shipper, inducing the lighterage company to receive the cargo to be lightered, when it knew that the steamer would not be ready to receive it as represented; libelant's only relief being in equity.

7. **Admiralty ⬅12—No jurisdiction of nonmaritime contracts.**

   Courts of admiralty having no jurisdiction of nonmaritime contracts, in a libel suit by a lighterage company against the shipper and against the owners of the ship to which the cargo was to be lightered for damage and delay, in which the purchaser of the cargo was brought in by the

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

shipper as primarily responsible, the court has no jurisdiction over the contract between the shipper and purchaser providing for delivery free on board.

Separate actions by the Simmons Transportation Company against the American Union Line and against the Alpha Portland Cement Company, in which the latter brought in the American Union Line and Gravenhorst & Co. under the fifty-ninth rule as primarily responsible. Interlocutory decree for libelant against the American Union Line, and decree of dismissal in the other case.

Frederick W. Park, of New York City, for libelant.

Louis H. Porter, of New York City (F. C. Taylor, of New York City, of counsel), for Alpha Portland Cement Co.

Engel Bros., of New York City (J. B. Engel, of New York City, of counsel), for American Union Line.

WARD, Circuit Judge. These two cases were tried together. Gravenhorst & Co. purchased 2,000 barrels of cement from the Alpha Portland Cement Company, deliverable f. o. b. steamer to be named; the steamer Callala was subsequently named, to berth at Sixty-Ninth street, Brooklyn.

The Simmons Transportation Company was the charterer of the boats Annie Carpenter and Mary Carpenter under the usual harbor charter of demise for the term of one year at $20 a day, and although they paid the master he remained the servant of the owner, the American Cement Company, and had nothing whatever to do with the loading or discharging of the boat; his sole duty being to look after its safety for the owner.

The Alpha Portland Cement Company employed the Simmons Company to carry this shipment of cement to the steamer Callala, and for that purpose handed it a shipping order of the Alpha Portland Cement Company and a loading permit of the American Union Line, Incorporated, addressed to its receiving clerk, for the boats, if arriving and reporting February 25 and 26, 1919.

Throughout the pleadings of the Simmons Company, the Alpha Company and the American Union Line it is admitted that the cement might be discharged either on the steamer or on the pier. The Simmons Company inquired of the American Union Line whether it would receive the cement February 25 and 26 and were answered that it would. In point of fact the steamer Callala did not arrive at her berth until after all the things material in these cases had happened, so that only room on the pier need be considered.

The boats arrived and reported at Sixty-Ninth street February 25 and a storm threatening from the northwest, which would make the berth unsafe, in the afternoon of the 26th, it was arranged between the Simmons Company and the American Union Line that the boats should be removed to a safe berth and returned when the American Union Line was ready to receive the shipment.

The American Union Line insists that it was then ready to receive the cement on the pier and the superintendent testifies that he offered the captain of the Mary Carpenter, who had the papers for both boats,

to do so on the 25th. The captain of the boat denies this, and says there was no room on the pier for the cement. I believe him, because he had nothing whatever to do with the unloading, and there was no occasion for the superintendent to consult him. If the American Union Line wanted the cargoes, all its superintendent had to do was to unload them; the stevedoring being entirely in the hands of that company. It could have been done in five hours. If there had been room on the pier I think the company would have unloaded before the boats went on the 26th and certainly, when agreeing that they might go away, would have said something about having room.

[1] There having been no contract on the subject of demurrage, the Simmons Company can only claim damages in the nature of demurrage for running days beginning February 27, until there was room enough on the pier to receive the cement. The evidence on this subject being very meager, it will be left for determination by the commissioner.

[2] It is true that a strike of tugboatmen began March 4, lasting until March 24 (when the Simmons Company did send the boats to Sixty-Ninth street), which made it difficult to get tugs. Still the evidence is they could have been had, and that some were had by the Simmons Company, and that it did not make much effort to get tugs. Therefore, even if it were necessary to pay $100 an hour as against the normal price of $25, that would be no excuse to the Simmons Company for not fulfilling its agreement to return and report when the American Union Line was ready to receive the cement on the pier.

The usual interlocutory decree for the libelant will pass in this case.

The suit against the Alpha Portland Cement Company was filed some 20 days after the suit against the American Union Line.

[3] (1) The libelant claimed to recover any demurrage which it might fail to collect in its first suit against the American Union Line. But the Circuit Court of Appeals of this circuit in Ben Franklin Transportation Co. v. Federal Sugar Refining Co., 242 Fed. 43, 154 C. C. A. 635, has held that, in the absence of an agreement to the contrary, a shipper by lighters to a steamer has nothing to do with delay at the steamer end. I think there was no such agreement here. The Simmons Company had long done towing for the Alpha Company, and there is evidence of an officer of the Simmons Company that he had on some previous occasions, as well as on this occasion, said to officers of the Alpha Company that demurrage would be charged for any delay of its lighters beyond 48 hours. This is denied by witnesses from the Alpha Company. I discover nothing to show that there ever was any agreement between the parties on the subject. On the contrary, the Simmons Company's letter of May 12 to the Alpha Company does not seem to me very consistent with an agreement of the Alpha Company to pay demurrage. It concludes as follows:

"Invoice for this lighterage was forwarded to your New York office last Saturday, with demurrage included, and we trust, in view of the increased cost to us, due to permit calling for delivery at an exposed pier, that you will make every effort to collect this demurrage from the American-Union Line, so that we may at least be reimbursed to that extent."

The Alpha Company replied:

"Your letter of May 12 regarding demurrage on the boats Mary Carpenter, Annie Carpenter, and Key West No. 2490. Reply has been delayed, due to the writer's absence from town. I appreciate the conditions under which this matter was handled by you, and we will certainly do all we can with the steamship company to have them allow your claim for demurrage. We, of course, cannot be responsible, and have, therefore, eliminated it from your bill."

To this no answer was sent.

[4] (2) The Simmons Company also reclaimed anything it might have to pay for damage to the boats which it had chartered of the American Cement Company. As the Alpha Company had no control of the boats at all, and was only getting their carrying capacity, it cannot be held responsible over to the Simmons Company for the damage.

[5] (3) There was also a claim to be repaid the sum of $431.20 for damage to 140 barrels of cement, which the Simmons Company paid to the Alpha Company, on the ground that the payment was made under a mistake of law and fact. The fact is that the Alpha Company billed the Simmons Company for the damage, saying that if the bill were not paid the amount would be deducted from the freight payment. The Simmons Company did pay the bill, and the Alpha Company paid the freight in full. Where was the mistake of fact? There was no mistake of law, because the Simmons Company's negligence in not taking seasonable steps to protect the boats, because of which I have held it liable for the damage done to them, applies equally to damage to the cargo. Moreover, for affirmative relief against mistakes of law or fact parties must go into equity. Courts of admiralty, though they proceed on equitable principles, have no such jurisdiction. Williams v. Insurance Co. (D. C.) 56 Fed. 159; Meyer v. Pacific Mail S. S. Co. (D. C.) 58 Fed. 923; The Eclipse, 135 U. S. 599, 10 Sup. Ct. 873, 34 L. Ed. 269; Benedict's Admiralty, § 143.

It is further said that the entry in question was a mere bookkeeping entry, but I find that it was a substantial entry, presumptive evidence of a voluntary payment by the Simmons Company, and that its demand for repayment was an afterthought.

[6-7] (4) The libelant also reserved the right to prove that the Alpha Company knew, when it delivered the loading permit and shipping order to it, that the American Union Line would not be ready to receive cargo February 25 and 26, and in order to save expense to itself induced the libelant to receive the cargo by false representations, to its damage; no amount of damage being stated or claimed.

There is not the slightest evidence to support these allegations, and, if there were, a court of admiralty would have no jurisdiction to give relief, for the reasons just stated in connection with the payment for damage to cargo.

The Alpha Company brought in Gravenhorst & Co. and the American Union Line under the fifty-ninth rule as primarily responsible. The libel will be dismissed, and both petitions dismissed, with costs against the Alpha Company. There is in the case of Gravenhorst & Co., the additional reason for so doing that they were mere purchasers

from the Alpha Company of cement to be delivered f. o. b., as to which, being a nonmaritime contract, there is no jurisdiction in the admiralty. Opinion of the Circuit Court of Appeals of this circuit in Aktieselskabet Fido v. Lloyd Braziliere et al., 283 Fed. 62, decided June 19, 1922.