## EAGLE, STAR & BRITISH DOMINIONS v. TADLOCK et al.

### No. 886.

District Court, S. D. California, Central Division.

April 30, 1936.

Chalmers G. Graham and Truman R. Young, both of San Francisco, Cal., for complainant.

Lloyd S. Nix, of Los Angeles, Cal., for defendant Garbutt-Walsh.

Hamilton, Lindley & Higgins and J. Du Paul, all of San Diego, Cal., for defendant M. G. Tadlock.

YANKWICH, District Judge.

Subdivision 26, § 41, title 28, U.S.C. A. (originally enacted on February 22, 1917, amended on May 8, 1926, and on January 20, 1936), gives district courts original jurisdiction of suits in equity begun by bills of interpleader or bills in the nature of interpleader filed by (*among others*) any person, firm, corporation, association, or society having issued a policy of insurance of the value of $500 or more if (1) two or more adverse claimants, citizens of different states, are claiming to be entitled to the money and (2) the complainant has deposited it into the registry of the court there to abide the judgment of the court. Such a suit may be brought although the titles or claims of the conflicting claimants do not have a common origin or are not identical but are adverse and independent of one another. The suit may be brought in the district court of the district in which one or more of the claimants reside or resides. The court is given power to issue process for all the claimants and to issue an order of injunction against all claimants

enjoining them from "instituting or prosecuting any suit or proceeding in any state court or in any federal court on account of such money." The court is given power to hear and determine the cause and to discharge the complainant from further liability, to make the injunction permanent, and to enter all orders or decrees which may be suitable and proper, as well as to issue all customary writs as are necessary or convenient to carry it out and enforce it. In an action at law against any person, firm, corporation, association, or society, the defendant may set forth, by way of equitable defense, matters otherwise available by way of interpleader under this enactment, and join as parties claimants not already parties to the action. The statute is merely jurisdictional. It does not change the equitable principles of interpleader. Interpleader under this enactment is still governed by the general rules which govern it in federal courts. Calloway v. Miles (C. C.A.6, 1929) 30 F.(2d) 14; National Fire Insurance Company v. Sanders (D.C.Tex. 1929) 33 F.(2d) 157; Pacific Mutual Life Insurance Company v. Lusk (D.C.La. 1930) 46 F.(2d) 505.

Acting under this section, the complainant, a British corporation, has filed its bill in interpleader. Coincident with its filing it has deposited in the registry of the court the sum of $7,160, the proceeds of a marine insurance policy executed at San Francisco, Cal., on February 13, 1936, upon the Diesel vessel Yellowtail, payable to M. G. Tadlock and/or Security Trust & Savings Bank of San Diego and/or Garbutt-Walsh, a copartnership, as their respective interests may appear. The Yellowtail burned on February 22, 1936, and sank at sea and became a total loss, owing to the perils insured against in the policy. The company admits its liability to the full extent of $8,000, the amount of the policy, from which is deducted, however, the sum of $840, the unpaid premium. It disclaims any interest in the amount deposited in the registry except to pay the same to the person or persons lawfully entitled to receive it. Conflicting claims to portions of the amount have been asserted by various defendants. They need not be detailed here, because we are concerned with one only of the claimants, who, in answer to the rule to show cause, has questioned the jurisdiction of the court to determine its claim. The claimant is Garbutt-Walsh, a copartnership, who prior to the filing of the bill in interpleader filed, in admiralty, in our own court, a libel in personam against the complainant here, the assured and others, claiming a maritime lien upon the Yellowtail by reason of materials, supplies, and equipment furnished in the sum of $4,358.-06, and asking that the proceeds of the maritime insurance be impressed with a lien in that amount.

Ultimately, the question involved is whether we have the power, under the provisions of the enactment cited, to enjoin the prosecution of the libel in admiralty and to compel the libelant in that case to litigate his right to the fund in this proceeding, in interpleader, on the equity side of this court.

It would seem to me that the provision of the section giving district courts power to enjoin the claimants from "instituting or prosecuting any suit or proceeding in any State court or in *any United States court*" is direct authority for this court's exercising equity jurisdiction to enjoin a litigant from prosecuting any suit now pending before this court in admiralty. The legislative history of the section compels such conclusion. The direct authorization of injunctions against both state and federal courts was added by the amendment of 1926, and retained, with slight change of wording, by the amendment of 1936. Prior to the amendment of 1926, the courts had held that no power to issue injunctions against proceedings in state courts existed. Essanay Film Manufacturing Company v. Kane (C.C.A.3, 1920) 264 F. 959; Lowther v. New York Life Insurance Co. (C.C.A. 3, 1922) 278 F. 405. In one of the first suits brought under the 1926 amendment, Fidelity & Deposit Company v. A. S. Reid & Co. (D.C.Pa.1926) 16 F.(2d) 502, 504, Thompson, District Judge, thus interpreted the purpose of the enactment:

"Congress has provided in the act an appropriate remedy to bring into one court, where diversity of citizenship exists, the conflicting claims of adverse parties against a fund held by one having no interest in its distribution, in order that the rights of all claimants may be determined in an orderly manner in one proceeding, thus avoiding a multiplicity of suits. The Constitution has given to the court the capacity to take jurisdiction, and the act of Congress has supplied it. Therefore the two things necessary to create jurisdiction have vested in this court the power, *not only to enjoin the institution of any suit or proceeding in another court on the bond, but also the prose-*

*cution of any such suit or proceeding already begun when the instant suit was brought."* (Italics added.)

The very purpose of interpleader would be defeated if the court given jurisdiction to entertain the bill were not given the power to compel litigants to bring to its forum the adjudication of all the claims to a fund as to which the claimant is a mere stakeholder. The remedy of interpleader would be illusory unless the court had the power upon a rule to show cause to discharge the stakeholder from liability and to compel the claimants to litigate their respective rights to the fund. The complete exercise of such power demands the existence in the court of the power to enjoin the claimants from instituting or prosecuting actions in other courts pertaining to the claim. See 32 Cor.Jur. p. 111. Equity courts are the only ones which can exercise that power by virtue both of their general jurisdiction and of the special jurisdiction given to them in matters relating to insurance. While the jurisdiction of district courts in admiralty, under the Constitution, is broader than the jurisdiction of English admiralty courts, courts of admiralty are yet courts of limited jurisdiction. Benedict on Admiralty (5th Ed.) p. 95. It is sometimes said that, in exercising their jurisdiction, admiralty courts may resort to principles of equity. But this only means that the court construes the instruments with the liberality of a court of equity. See O'Brien v. Miller (1897) 168 U.S. 287, 18 S.Ct. 140, 42 L.Ed. 469.

"It is true," said Hough, District Judge, in United Transportation & Lighterage Company v. New York & Baltimore Transportation Line (D.C.1910) 180 F. 902, 904, "that a court of admiralty is often spoken of as one of equity, but that phrase means no more than that equitable principles are applied to the solution of matters of maritime jurisprudence. It is a perversion of the phrase to argue from it that, because admiralty seeks for aid in the analogies of equity, a maritime court is therefore entitled to draw within its jurisdiction matters primarily of nonmaritime cognizance. The temptation is often strong to pursue a controversy between two litigants into all its ramifications, and endeavor to adjudicate them all in one decree. *But in a court of limited jurisdiction (however important) the temptation should be carefully withstood."* (Italics added.)

In the Eclipse (1890) 135 U.S. 599, 10 S.Ct. 873, 876, 34 L.Ed. 269, Mr. Chief Justice Fuller said: "While the court of admiralty exercises its jurisdiction upon equitable principles, it *has not* the characteristic powers of a court of equity. It cannot entertain a bill or libel for specific performance, or to correct a mistake (Andrews v. Essex F. & M. Ins. Co. [Fed.Cas. No. 374], 3 Mason, 6, 16) ; or declare or enforce a trust or an equitable title (Ward v. Thompson, 22 How. [63 U.S.] 330 [16 L. Ed. 249; Hill v. Amelia [Fed.Cas. No. 6,-487] 6 Ben. 475; Kellum v. Emerson [Fed. Cas. No. 7,669] 2 Curt. 79) ; or exercise jurisdiction in matters of account merely (Grant v. Poillon, 20 How. [61 U.S.] 162 [15 L.Ed. 871]; Minturn v. Maynard, 17 How. 477 [15 L.Ed. 235]; The Ocean Belle [Fed.Cas. No. 10,402] 6 Ben. 253), or decree the sale of a ship for an unpaid mortgage, or declare her to be the property of the mortgagees, and direct possession of her to be given to them. Bogart v. The John Jay, 17 How. [58 U.S.] 399, 15 L.Ed. 95]." (Italics added.)

So also is the equity power to grant relief for mistake or fraud denied them. See The Sappho (D.C.S.C.1898) 89 F. 366; Simmons Transportation Co. v. Alpha Portland Cement Co. (D.C.N.Y.1922) 286 F. 955.

A bill in interpleader is a creature of equity. If, as the cases just cited show, a court of admiralty cannot decree specific performance or relieve from fraud or mistake or declare or enforce a trust or an equitable title or take an accounting, we cannot see how it can entertain a bill in interpleader. Benedict (Admiralty, [5th Ed.] vol. 1, § 345), while stating that the practice of interpleader "has not prevailed in the admiralty," claims that an admiralty court "will not hesitate to avail itself of the principle involved in that practice, where it is deemed necessary." The authority for the statement is Copp v. De Castro & Donner Sugar-Refining Co. (1875) 6 Fed.Cas. page 520, No. 3,215. There, the master of a brig filed a libel in personam against the consignee of a cargo of sugar. Before answering the bill, the consignee filed a petition to the court in which they alleged that the freight was claimed also by an assignee of the charterer of the brig. The court allowed the prayer of the petition that the consignee pay the freight into court, be discharged from liability, and restrained the master and the assignee from proceeding against him further. District Judge Benedict, in his opinion, maintained that a court of admiralty had the power to entertain a

bill of interpleader and issue an injunction in aid of it. The authority of the case is weakened greatly by the fact that, of the three litigants affected, two were already before the court, and the third one, the libelant, had filed the original libel asking for the decree of the court. So the action of the court in that case was sustainable upon the ground that, the nonconsenting litigant having asked one kind of judgment, it was within the power of the court to decree a different method of adjudicating the rights. In fact, the opinion so states:

"In the present case, however, no question can arise in respect to jurisdiction over the parties, for two of them are already before the court and the third consents to appear, and asks to be allowed to submit its rights to the determination of the court. Nor is there any room to doubt the power of the court to restrain the parties, as requested, *for all parties consent* to the restraint except the libellant Copp; and as to him, *asking as he does the decree of this court*, it is of course competent for this court to control his proceeding here, and I doubt not to prevent him from taking proceedings elsewhere, in case the freight be paid into court." Copp v. De Castro & Donner Sugar Refining Co., supra, at page 521 of 6 Fed.Cas. No. 3,215. (Italics added.)

Upon theory, the decision cannot be followed (1) because the purely equitable nature of a bill of interpleader places it outside of admiralty; and (2) because the latest decisions of our courts distinctly hold that an admiralty court cannot issue injunctive process in admiralty except in limitation of liability proceedings and to aid the execution of its final decrees. See Schoenamsgruber v. Hamburg American Line (1935) 294 U.S. 454, 55 S.Ct. 475, 79 L.Ed. 989; Streckfus Steamers, Inc., v. Mayor and Aldermen of Vicksburg (C.C.A. 5, 1936) 81 F.(2d) 298. Nor can a court in admiralty, having obtained jurisdiction, retain it for the purpose of doing complete justice after the manner of a court of equity. See The Ada (C.C.A.1918) 250 F. 194; The Wabash (D.C.Conn.1923) 296 F. 559; Yone Suzuki & Co. v. Central Argentine R. R. (D.C.N.Y.1927) 19 F.(2d) 645, 653; The Kearney (C.C.A.3, 1926) 14 F. (2d) 949. On the other hand, this right is of the very essence of equity jurisdiction. In conformity with the principle that equity follows the law, equity, in determining adverse claims, brought to it through inter-

pleader, can apply the legal principles governing such matters. Pomeroy's Equity Jurisprudence (4th Ed.) § 425; 31 Cor. Jur. 121, 122; Magniac v. Thomson (1858) 15 How. 281, 14 L.Ed. 696; Clinchfield Fuel Co. v. Titus (C.C.A.4, 1915) 226 F. 574. Thus, assuming that, in interpleader, certain liens, rights, or priorities established by maritime law were involved, equity would have full power to determine those rights according to the principles of maritime law. As said in Pratt v. Paris Gaslight & Coke Co. (1897) 168 U.S. 255, 18 S.Ct. 62, 64, 42 L.Ed. 458: "When vessels have passed into the hands of an assignee or receiver, it has been the constant practice of courts of bankruptcy and *equity to respect the liens given by the maritime law*, to marshal such liens, and direct their payment, precisely as a court of admiralty would have done. In re Scott, Fed.Cas. No. 12,517, 1 Abb.U.S. 336; In re Kirkland, 14 Fed.Cas. page 677, No. 7,842; In re People's Mail Steamship Co., Fed.Cas. No. 10,970, 3 Ben. 226; High, Rec. § 138." (Italics added.)

■ The rules of interpleader in federal courts are rather simple. Disregarding many of the rules with which state courts have weighted it, they merely require, *in addition to federal jurisdictional requirements*, (1) the existence of a stakeholder having in his possession money or property, which (2) is claimed adversely by others, and (3) in which he claims no interest. See Killian v. Ebbinghaus (1884) 110 U.S. 568, 4 S.Ct. 232, 28 L.Ed. 246; Groves v. Sentell (1894) 153 U.S. 465, 14 S.Ct. 898, 38 L.Ed. 785; Kingdom of Roumania v. Guaranty Trust Company of New York (D.C.N.Y. 1917) 244 F. 195; Pacific Mutual Life Ins. Co. v. Lusk (D.C.La.1930) 46 F.(2d) 505; Connecticut General Life Insurance Co. v. Yaw (D.C.N.Y.1931) 53 F.(2d) 684; Zechriah Chafee, Jr., "Interpleader in the United States Courts" (1932) 41 Yale Law Journal, 1134; 42 Yale Law Journal, 41, at pages 54–56.

The bill on file conforms to these requirements *other than jurisdictional*. Complainant is merely a stakeholder; the claimants listed claiming either the entire fund or portions of it. M. G. Tadlock, Security Trust & Savings Bank, and Garbutt-Walsh are all designated as payees. By the terms of the policy the loss "is payable as their respective interests may appear" to the three persons. So we have three persons any one of whom may claim the entire sum.

In addition to this, we have a specific claim of Garbutt-Walsh for $4,358.06, one for $1,022.43 by another claimant and claims by other claimants, the amount of which is not stated. The aggregate of the claims exceeding the amount owed by the complainant and deposited in court, the interest of each claimant is adverse to that of the other, as each will be interested in reducing the other's claim in order to prove his. See Fidelity & Deposit Company of Maryland v. A. S. Reid & Co., supra.

When we come, however, to consider the fundamental jurisdictional requirement without which the District Court cannot entertain such an action, we are confronted with the fact that the bill shows on its face that there are no "two or more adverse claimants, citizens of different states * * * claiming to be entitled to the money."

On the contrary, it appears that all claimants are citizens and residents of the state of California. It is the contention of the complainant that its foreign citizenship gives the court jurisdiction.

██ Subdivision 1 of section 41, title 28 U.S.C.A., gives the District Court original jurisdiction "of all suits of a civil nature, at common law or in equity * * * where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000 * * * or (c) is between citizens of a State and foreign States, citizens, or subjects." Provided the jurisdictional monetary minimum be present, this provision is authority for the right of an alien to sue and be sued in the District Court. See Barrow Steamship Company v. Kane (1898) 170 U.S. 100, 18 S. Ct. 526, 42 L.Ed. 964; Breedlove v. Nicolet (1833) 7 Pet. 413, 8 L.Ed. 731; Betancourt v. Mutual Reserve Fund Life Insurance Co. (C.C.N.Y.1900) 101 F. 305; Eldorado Coal & Mining Co. v. Mariotti (C.C.A.7, 1914) 215 F. 51. However, the special enactment we are considering has made jurisdiction to depend upon the existence of an additional condition—the existence of claims by two or more adverse claimants *who are citizens of different states.* And the history of the enactment shows that the original aim was to allow a remedy to insurance companies where claimants resided in different states. In the report of the Senate Judiciary Committee on the act (Senate Report 660, Serial 6899, vol. 3, First Session, 64th Congress, 1915–1916), the object to be attained by the enactment of the section in its original form was thus stated: "The bill seeks to cure an evil. The evil is the inability of the holder of the fund, *which is claimed by diverse claimants, who reside in different states,* to obtain proper relief in a tribunal having jurisdiction over all such claimants. Under the present judicial system, there is no such tribunal, and therefore, no relief to the holder of such fund." (Italics added.)

Ever since its enactment, many of the courts to whom the question has been presented have held consistently that the existence of *claimants of diverse citizenship* is a condition precedent to the jurisdiction of the District Court. In Mutual Life Insurance Company of New York v. Lott (D.C.Cal. 1921) 275 F. 365, 369, Bledsoe, District Judge, held that under the original enactment of 1917 the District Court had no jurisdiction to entertain an insurance interpleader where it appeared that one of the claimants was a resident and the other a citizen of the District of Columbia. Speaking of the jurisdictional basis of the statute, he said: "It is to be observed that the *only basis for the assertion of federal jurisdiction mentioned in the statute is that contained in the fact, which must be made to appear from the allegations of the verified bill, 'that two or more adverse claimants, citizens of different states,* are claiming or may claim to be entitled to such insurance or benefits.' " (Italics added.)

The foreign citizenship of the plaintiff corporation in that case was held insufficient to confer jurisdiction. Under the 1926 amendment, it has been held similarly that diversity of citizenship of the claimants is essential to jurisdiction. The amendment of January 20, 1936 (49 Stat. c. 13, § 1, 28 U.S.C.A. § 41(26), did not change the requirement in this respect. So the cases arising under the original section and under the 1926 amendment are pertinent to the enactment as it stands today. We consider these cases. In Massachusetts Mutual Life Insurance Co. v. Grossman (D.C.N.Y. 1933) 4 F.Supp. 990, it is said that under the 1926 amendment *"jurisdiction is based on the fact that 'two or more adverse claimants, citizens of different States, are claiming to be entitled to such insurance.' "* (Italics added.)

The following quotation from Klaber v. Maryland Casualty Company (C.C.A.8, 1934) 69 F.(2d) 934, 938, is singularly apposite:

"The substantial differences between the 1917 Act and the 1926 Act are these: (1) The former did not specifically refer to casualty and surety companies; the latter does. (2) The former required that it be 'made to appear by such bill * * * that two or more adverse claimants, citizens of different States, are claiming or may claim to be entitled to such insurance or benefits.' The latter requires that such bill aver *that two or more adverse claimants, citizens of different States,* are claiming to be entitled to such money or property or the penalty of such bond, or to such insurance, indemnity, or benefits.' (3) The former contained no authority for enjoining proceedings in other courts; the latter has such a provision. (4) Under the former it was in some instances difficult to determine where the bill should be filed; the latter clarifies that situation.

"An interesting comparison of the two acts is to be found in a paper read before the Association of Life Insurance Counsel on December 8, 1926, by Mr. Joseph S. Conwell, counsel for the Penn Mutual Life Insurance Company. See, 'Association of Life Insurance Counsel Proceedings,' vol. III, p. 469. In speaking of the difference between the 1917 Act and the 1926 Act with respect to the averment as to claimants, he says:

" 'Considerable difficulty was experienced by the Committee with what is termed the "may claim" clause. Some of the members of the Senate sub-committee *were not willing* to permit the companies to obtain jurisdiction of the District Court where there was only a possibility that two or more persons "may claim" the proceeds of the policy, and hence it was necessary, in order to secure the passage of the Act of 1926, that the words "may claim" be stricken from the Act. Under the later Act, *therefore two or more adverse claimants, citizens of different states, must actually claim to be entitled to the proceeds of the policy.'*

"Professor Chafee, in his article, 'Interpleader in the United States Courts,' vol. 41, Yale Law Journal, p. 1134, in a footnote on p. 1163, says:

" 'This change was made in order to secure the passage of the Act of 1926. Some of the members of the Senate sub-committee were not willing to permit the companies to obtain the jurisdiction of the District Court when there was only a possibility of claims by two or more persons.'

"It is clear that, in order to invoke the enlarged powers granted to the United States District Courts by Congress with respect to certain bills of interpleader, the insurer must present a bill which not only contains the averments required by the statute, but which is sufficient under the principles of equity. The act does not deprive the federal courts of any jurisdiction which they previously had over bills of interpleader, nor does it change the equitable principles governing such bills. Mutual Life Ins. Co. of New York v. Bondurant (C.C.A.6) 27 F.(2d) 464; National Fire Ins. Co. v. Sanders (C.C.A.5) 38 F.(2d) 212, 214; Calloway v. Miles (C.C.A.6) supra, 30 F.(2d) 14. *It merely provides that in certain cases and for the benefit of a class of disinterested stakeholders the courts may exercise* powers that could not otherwise be exercised." (Italics added.)

Three things are evident from this lengthy excerpt: (1) That the chief ground for the legislation was the desire to allow a stakeholder to bring into court *claimants of diverse citizenship,* some of whom were not residents of the district in which the suit was commenced; (2) that the statute sought to extend the powers of the court to matters over which they would not otherwise have jurisdiction and to overcome the effect of the decision in New York Life Insurance Co. v. Dunlevy (1916) 241 U.S. 518, 36 S.Ct. 613, 60 L.Ed. 1140; and (3) that the legislators were, in view of this extension of power, determined that the claimants be actual claimants. See Sanders v. Armour Fertilizer Works (1934) 292 U. S. 190, 54 S.Ct. 677, 78 L.Ed. 1206, 91 A. L.R. 950. One can readily understand the insistence upon diversity of citizenship of the claimants as a basis for giving the District Court jurisdiction in such cases rather than allowing that diversity of citizenship be, as it is in ordinary cases, the criterion of jurisdiction. 28 U.S.C.A. § 41, subd. 1 (c). In interpleader the claimants are the real contestants. It is logical, therefore, that their citizenship and not that of the stakeholder determine jurisdiction. Our attention has been called to certain language in Connecticut General Life Insurance Co. v. Yaw, supra, which implies that a district court, under its equity jurisdiction, might entertain, upon the sole ground of diversity of citizenship, an interpleader of the type specifically provided for by section 41, subd. 26, 28 U.S.C.A.

An examination of the case discloses, however, that the essential requirement of

interpleader under that section, namely, *diversity of the citizenship of the claimants,* was present. The complainant was a Connecticut corporation. Of the two claimants, one resided in Florida and the other in New York, where the action was instituted. And the opinion specifically recognizes the need for compliance with the special requirements of the section: "The statute having set up the conditions upon which interpleader proceeding may be brought, such equitable right is restricted." Connecticut General Life Ins. Co. v. Yaw, supra, 53 F.(2d) 684, at page 686.

In Turman Oil Co. v. Lathrop (D. D.Okl.1934) 8 F.Supp. 870, and Penn Mut. Life Ins. Co. v. Maguire (D.C.Ky.1936) 13 F.Supp. 967, bills were entertained based solely upon diversity of citizenship as between the plaintiff and defendant. But the first case was clearly a nonstatutory interpleader, while the second case sustains jurisdiction upon general equitable grounds and disregards entirely the requirement of diversity of citizenship contained in the interpleader statute. I do not think that the requirement of diversity of citizenship can be so disregarded. It is, as I have sought to indicate, an essential requirement. See, also, Calloway v. Miles (C.C.A. 6, 1929) 30 F.(2d) 14, 15. The extension of the enactment originally intended for insurance companies only to all persons occupying the position of stakeholders lends support to this conclusion. Zechariah Chaffee, Jr., one of its authors, states that, by the act of 1936, "this remedy is now available to individuals and corporations generally if they are subjected to claims by residents of two or more states." "The Federal Interpleader Statute of 1936," 45 Yale Law Journal (1936) 963, 966.

An interpretation which would, as the statute stands now, allow one form of interpleader under general equity principles based upon diversity of citizenship as between the plaintiff and the defendant, and another form under the statute, in cases involving diversity of citizenship of claimants, would give us two kinds of bills in interpleader; one, dependent upon diversity of citizenship as between plaintiffs and defendants with the jurisdictional minimum of $3,000, and another dependent upon diversity of citizenship between claimants, with a jurisdictional minimum of $500. I cannot conceive that the Congress, by enlarging the interpleader statute, has sought to create such a situation. Rather do I believe that they intended to cover the entire field by broadening the scope of what had previously been a statute of limited scope for the benefit of insurance companies only. So doing they viewed the citizenship or alienage of the stakeholder as entirely immaterial, and his interest in the controversy as that of a nominal party only [see Von Herberg v. City of Seattle (C.C.A. 9, 1928) 27 F.(2d) 457] and grounded jurisdiction upon diversity of citizenship of the real parties in interest—the claimants. The only important function of the court in interpleader is the settlement of controversies as to the fund in its hands. If the diversity of citizenship of the claimants be disregarded, we would find the District Court, after the deposit of the money, settling controversies between citizens of the same state—a jurisdiction which it does not and cannot constitutionally have. Constitution of the United States, article 3, § 2, cl. 1.

It follows that, there being no diversity of citizenship between the claimants here, the complainant's alienage cannot supply that absent jurisdictional factor. It is therefore not in a position to claim the benefit of the enactment by filing a bill in interpleader. Nor can the bill of interpleader be sustained as an original bill of interpleader upon general equitable grounds, in view of the jurisdictional restriction of the enactment herein discussed. The objecting claimant is therefore entitled to an order discharging the rule to show cause as to him. Under the circumstances, no interlocutory decree of any kind, even as to the answering claimants, should issue at the present time. It should abide further proceedings.