## FLORIDA PUBLIC UTILITIES CO. v. CITY OF WEST PALM BEACH et al.

Circuit Court of Appeals, Fifth Circuit. December 11, 1929.

No. 5584.

Scott M. Loftin, James E. Calkins, and John P. Stokes, all of Miami, Fla., and J. Dwight Dickerson, of Chicago, Ill., for appellant.

J. Mark Wilcox, City Atty., of West Palm Beach, Fla., for appellees.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

FOSTER, Circuit Judge. Appellant, the Florida Public Utilities Company, a Florida corporation engaged in furnishing gas to the inhabitants of West Palm Beach, Fla., filed a bill against the said city and the city commissioners, praying for interlocutory and final injunctions, to prevent the said defendants from putting into effect a city ordinance materially reducing rates for gas. From a judgment denying a preliminary injunction this appeal is prosecuted.

The bill substantially alleges as follows:

Appellant has a franchise to furnish gas to the inhabitants of West Palm Beach, by virtue of an ordinance adopted by the city in January, 1915. The said ordinance granted the privilege to one Thomas S. Kennedy, his heirs and assigns, and fixed the rate for gas at $2 for 1,000 cubic feet. Appellants succeeded to the rights of Kennedy and furnished gas in conformity to the ordinance. In October, 1920, by an ordinance amending the original ordinance, the rates were raised to not exceeding $2.50 for 1,000 cubic feet. By a third ordinance, adopted March 26, 1929, which is the ordinance sought to be enjoined in its operation, the rates were reduced to $2 per 1,000 cubic feet for the first 10,000 feet furnished each customer and $1.80 per 1,000 cubic feet for any excess.

The fair value of appellant's property used and useful in furnishing gas to the city of West Palm Beach is $946,000, and at the new rates prescribed, after deducting expenses and depreciation, the return would be less than $40,356 per annum, which is less than 4.27 per cent. on the present fair value of the property and confiscatory, in violation of the Fourteenth Amendment.

Appellant has more than 3,500 customers and the monthly bills average $6.50. If the ordinance is not suspended, these customers will refuse to pay more than the new rates and it would be impracticable to enforce payment at the old rates.

The bill is supported mainly by a lengthy affidavit of Charles W. Spooner, an independent consulting engineer, who qualifies as an expert. There is some discrepancy between the figures used by Spooner and those shown in other affidavits on behalf of appellant, but they are not very material. In the main the affidavit of Spooner is not contested except as to an item of $6,340 included in expenses as uncollectible accounts, about $1,000 included in expenses, in the item of taxation, and the item of depreciation, which Spooner fixed at $22,498 and appellee at not over $18,559. If these be resolved in favor of appellee, the probative value of the affidavit is not materially affected. In arriving at his conclusions, Spooner endeavored to determine the replacement cost of the property less accrued depreciation, which is a method generally approved by the courts, and adopted 3½ per cent. as the amount to be deducted for annual depreciation, which prima facie does not seem to be excessive.

It further appears that appellant also furnishes gas to Palm Beach and Lakeworth. A plant for generating the gas is located at

or near West Palm Beach and in each of the other two places there is simply a distributing system. In fixing the fair value of the property used and useful in the business at West Palm Beach, Spooner valued all the property in service and used only in furnishing gas to that city and, as to the property used jointly in furnishing gas to consumers in all of the places supplied, allocated to the city of West Palm Beach 70.4 per cent. of the fair value of such property, basing his conclusions on the total amount of gas used in the three places in the year 1928. This method is usually approved by the courts. Appellees challenged the correctness of this allocation in argument based on certain statistics appearing in the record showing that the difference between the peak load and the minimum is comparatively very much greater in Palm Beach than in West Palm Beach. It is not clear from Spooner's affidavit whether he took into consideration the variation in the use of gas throughout the year, and no separation is made as to the actual figures employed in valuing the joint property and the separate property, nor are the items going into the separate property shown. It is no doubt true that a company manufacturing artificial gas is required to have an excess of generating capacity to take care of the peak load, and in fixing the fair value of the property jointly used the fact that for approximately seven months of the year very little gas is consumed at Palm Beach should be taken into consideration. However, it may well be that the distributing system in West Palm Beach exceeds in value the generating plant and the peak load might be taken care of by adequate storage capacity at very much less cost than by a generating plant sufficient to produce enough gas daily to take care of the demand.

The criticism directed at the affidavits supporting the bill serves to emphasize the fact that cases of this kind cannot be satisfactorily determined on affidavits. Necessarily ex parte affidavits deal only with ultimate facts, which are all that a plaintiff is required to plead under Equity Rule 25.

The bill, with exhibits and supporting affidavits, shows a prima facie case entitling appellant to relief. It is plain that if appellant is forced to reduce its rates approximately 20 per cent., with the number of customers it has, and the small average of the monthly bills, it will suffer irreparable injury if eventually the reduction should prove to be unwarranted. On the other hand, the customers and the defendants may be amply protected by a bond. In Ohio Oil Co. v. Conway, 279 U. S. 813, 49 S. Ct. 256, 73 L. Ed. 972, the Supreme Court restated the rule as follows: "Where the questions presented by an application for an interlocutory injunction are grave, and the injury to the moving party will be certain and irreparable, if the application be denied and the final decree be in his favor, while if the injunction be granted the injury to opposing party, even if the final decree be in his favor, will be inconsiderable, or may be adequately indemnified by a bond, the injunction usually will be granted."

The judgment appealed from is reversed, with instructions to grant a preliminary injunction; appellant to give bond in such reasonable amount as shall be fixed by the District Court. The terms and conditions of said bond to be prescribed, and the surety to be approved, by the District Court.

Reversed.