**MUNOZ et al. v. PORTO RICO RY. LIGHT & POWER CO. ***

No. 3084.

Circuit Court of Appeals, First Circuit.
April 2, 1936.

William Cattron Rigby, of Washington, D. C., and Miguel A. Munoz, of San Juan, P. R. (B. Fernandez Garcia, Atty. Gen., and Nathan R. Margold, Sol., Department of Interior, of Washington, D. C., on the brief), for appellants.

Carroll G. Walter, of New York City (Henri Brown, of San Juan, P. R., on the brief), for appellee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This is a bill in equity brought by the Porto Rico Railway Light & Power Company (hereinafter referred to as the Power Co.) to enjoin the enforcement of an order made by the Public Service Commission of Puerto Rico (hereinafter referred to as the Commission) requiring the Power Co. to reduce its rates for furnishing electric energy on the island of Puerto Rico.

Jurisdiction is based upon the ground that the case arises under a law of the United States, namely, the Act of Congress of March 2, 1917 (39 Stat. 951), known as the Organic Act of Puerto Rico, which, among other things, prohibits the enactment by Puerto Rico of any law depriving any person of property without due process of law, or denying any person equal protection of law, or impairing the obligation of contracts. Section 2, as amended (48 U.S.C.A. § 737).

Upon the filing of the bill the Power Co., upon the bill and supporting affidavits, moved for a preliminary injunction, and the Commission was ordered to show cause why a preliminary injunction should not issue pendente lite as prayed for in the bill. The Commission appeared by counsel and moved to dismiss the bill for want of jurisdiction. After hearing the parties upon both motions, the District Court on May 18, 1935, denied the motion to dismiss and granted the motion for preliminary injunction. The Commission on May 29, 1935, presented what is entitled "a petition for rehearing and dissolution of preliminary restraining order," in which they prayed for "rehearing" and that "the preliminary order of injunction be dissolved." The motion was denied on August 15, 1935.

On September 13, 1935, the Commission filed an appeal from the order of August 15, 1935, denying the defendants' motion for a rehearing and dissolution of the preliminary injunction, and also on that day filed an

appeal from the decree of May 18, 1935, for a preliminary injunction, which were allowed September 16, 1935.

The Power Co. gave notice that upon the hearing of the appeal before this court a motion would be made to dismiss the appeal from the order of August 15, 1935, as unauthorized by law, and to strike from the record the new evidence tendered by the Commission in connection with their said petition to rehear and dissolve.

The appellants filed 54 assignments of error. Assignments Nos. 1, 2, 3, 11, 12, and 13 challenged the jurisdiction of the District Court below, which is the first question open for consideration.

It must be conceded, we think, that jurisdiction of the bill existed in the District Court of the United States for Puerto Rico under section 41 of the Organic Act of Puerto Rico (March 2, 1917, 39 Stat. 965, 48 U.S.C.A. § 863), unless it was taken away by the Act of Congress of May 14, 1934 (48 Stat. 775, 28 U.S.C.A. § 41(1, 1a), known as the Johnson Act.

Section 41 of the Organic Act for Puerto Rico (March 2, 1917, 48 U.S.C.A. § 863) provided as to the jurisdiction of the District Court of the United States for Puerto Rico as follows:

"Sec. 41. That Porto Rico shall constitute a judicial district to be called 'the district of Porto Rico.' * * * The district court for said district shall be called 'the District Court of the United States for Porto Rico.' * * * Such district court shall have jurisdiction of all cases cognizable in the district courts of the United States, and shall proceed in the same manner. * * * Said district court shall have jurisdiction of all controversies where all of the parties on either side of the controversy are citizens or subjects of a foreign State or States, or citizens of a State, Territory, or District of the United States not domiciled in Porto Rico, wherein the matter in dispute exceeds, exclusive of interest or cost, the sum or value of $3,000, and of all controversies in which there is a separable controversy involving such jurisdictional amount and in which all of the parties on either side of such separable controversy are citizens or subjects of the character aforesaid."

It will be noted that section 41 of the Organic Act of 1917 (48 U.S.C.A. § 863) provided that "such district court shall have jurisdiction of all cases cognizable in the district courts of the United States, and

shall proceed in the same .manner." We therefore turn to section 24, subd. 1 of chapter 231 of the Act of March 4, 1911 (36 Stat. 1091), now paragraph 1 of section 24 of the United States Judicial Code (28 U.S. C.A. § 41(1), to determine what cases are cognizable in the District Courts of the United States, which provides that the District Court shall have original jurisdiction as follows:

"First. Of all suits of a civil nature, at common law or in equity, brought by the United States, or by any officer thereof authorized by law to sue, or between citizens of the same State claiming lands under grants from different States; or, where the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000, and (a) arises under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority, or (b) is between citizens of different States, or (c) is between citizens of a State and foreign States, citizens, or subjects."

■■ There is nothing in this section or in the act which expressly extends its provisions to Puerto Rico. It was adopted by reference in section 41 of the Organic Law of 1917. Congress, it is clear, has never understood that in defining the jurisdiction of the courts of the United States it was defining the jurisdiction of the District Court of the United States for Puerto Rico, which is not a true United States court established under article 3 of the Constitution of the United States, but is a territorial court created by virtue of the power given to Congress by article 4, § 3, cl. 2, of the Constitution to make all .needful rules and regulations respecting territory belonging to the United States. Balzac v. Porto Rico, 258 U.S. 298, 312, 42 S.Ct. 343, 66 L.Ed. 627.

Congress has always defined the jurisdiction of the District Court of the United States for Puerto Rico by acts expressly applicable to that court.

In the first Organic Act known as the Foraker Act, enacted April 12, 1900 (31 Stat. 77, 48 U.S.C.A. § 863 note), Congress created a District Court of the United States for Puerto Rico, and provided that it should have the ordinary jurisdiction of District Courts of the United States and jurisdiction of all cases cognizable in the Circuit Court of the United States, and should proceed in the same manner as a Circuit Court,

By the Act of March 2, 1901, chap. 812, § 3 (31 Stat. 953, 48 U.S.C.A. § 863 note), Congress extended the jurisdiction of the District Court of. the United States for Puerto Rico to embrace all controversies where the parties or either of them are citizens of the United States, or citizens or subjects of a foreign state or states, wherein the matter in dispute exceeds, exclusive of costs, the sum or value of $1,000.

The abolishment of the Circuit Courts of the United States in 1911 and the transfer of their jurisdiction to the District Courts of the United States has never been held to affect the jurisdiction of the District Court of the United States for Puerto Rico. When Congress passed the Jones Act in 1917, it defined again the jurisdiction of the District Court of the United States for Puerto Rico in section 41 of that act (48 U.S.C.A. § 863), in which it provided that the District Court of the United States for Puerto Rico shall have jurisdiction of all cases cognizable in the District Courts of the United States, and of all controversies where all of the parties on either side of the controversy are citizens or subjects of a foreign state or states, or citizens of a state, territory, or district of the United States, not domiciled in Puerto Rico, wherein the matter in dispute exceeds, exclusive of interests or costs, the sum of $3,000, thus preserving in all cases a distinction between the territorial District Court for Puerto Rico and the District Courts of the United States in the strict sense of those words.

A change was made in the procedure in the District Courts of the United States in 1910, section 266 of the Judicial Code, 28 U.S.C.A. § 380, by providing that, in case an interlocutory injunction is asked for, suspending or restraining the enforcement, operation, or execution of any statute of a state by restraining the action of any officer of such state in the enforcement or execution of such statute, upon the ground of the constitutionality of such statute, the same shall be heard by three judges, one of whom, at least, shall be a Justice of the Supreme Court or a Circuit Judge, and the other two shall be either Circuit or District Judges.

It was held by this court in Benedicto et al. v. West India & Panama Telegraph Co., 256 F. 417, 419, that this act did not apply to Puerto Rico. This court said:

"Our view of section 266 of the Judicial Code of the United States is that its purpose was to prevent inordinate and precipitate federal interference with statutes and Constitutions of the states of the Union, which under their relations with the federal government are broadly administering their own laws, in a very substantial sense, as independent sovereignties. * * *

"Section 266, which we are considering, is, of course, so far as the states of the federal Union are concerned, a limitation upon the usual course of equity procedure as administered in the courts of the United States prior to its enactment; but the plenary power of the federal government in respect to the laws and Constitutions of the states is not, in any substantial sense, like its plenary power over a possession such as Porto Rico. Consequently, the theory of the relation between the federal government and the states of the Union does not encourage or justify the independent equity interference with the laws of the states that would be deemed reasonable, necessary, and justifiable in respect to a possession like Porto Rico."

It was further held:

"Section 41 of what is called the New Organic Act of Porto Rico provides that the United States District Court for that island 'shall have jurisdiction of all cases cognizable in the district courts of the United States, and shall proceed in the same manner' (Act March 2, 1917, c. 145, 39 Stat. 951 [48 U.S.C.A. § 863]) ; *but this we think was a grant of general equity powers,* and, in conferring such general jurisdiction, that Congress did not intend to qualify it by section 266, which, as we have said, relates to the laws and the Constitutions of the states under their peculiar relations and reserved rights under the federal Constitution." (Italics supplied.)

Up to the passage of the so-called Johnson Act in 1934 (48 Stat. 775, 28 U.S.C.A. § 41(1, 1a), we think it is clear that the District Court of the United States for Puerto Rico had jurisdiction in equity to enjoin the Public Service Commission of Puerto Rico from enforcing an order which was confiscatory in its nature, whereby the plaintiff, whether domiciled in Puerto Rico or not, was denied due process of law, the equal protection of the laws, or such order impaired the obligation of contracts, the requisite amount being involved. Organic Act 1917, § 41 (48 U.S.C.A. § 863) ; section 24, par. 1, of the Judicial Code (28 U.S. C.A. § 41(1).

Section 1 of the Act approved May 14, 1934, and referred to as the Johnson Act,

amended paragraph (1) of section 24 of the Judicial Code, supra, by simply adding to that paragraph the following:

"Notwithstanding the foregoing provisions of this paragraph, no district court shall have jurisdiction of any suit to enjoin, suspend, or restrain the enforcement, operation, or execution of any order of an administrative board or commission of a State, or any rate-making body of any political subdivision thereof, or to enjoin, suspend, or restrain any action in compliance with any such order, where jurisdiction is based solely upon the ground of diversity of citizenship, or the repugnance of such order to the Constitution of the United States, where such order (1) affects rates chargeable by a public utility, (2) does not interfere with interstate commerce, and (3) has been made after reasonable notice and hearing, and where a plain, speedy, and efficient remedy may be had at law or in equity in the courts *of such State.*" (Italics supplied.)

There is nothing in the language of this amendment to indicate that it was the intention of Congress that it should apply to Puerto Rico, or be construed as amending section 41 of the Organic Act of 1917.

It has generally been customary for Congress, in extending legislation to the territories and "possessions" of the United States, to expressly mention them as included within the purview of the act. See Jud.Code, § 128 (a) Fourth, 28 U.S.C.A. § 225(4); section 1 of the Bankr.Act (11 U. S.C.A. § 1); An Act to Regulate Commerce (24 Stat. 379, 49 U.S.C.A. § 1 et seq.); Copyright Act, 35 Stat. 1075, § 34 (17 U.S. C.A. § 34); Clayton Act (38 Stat. 730); Reconstruction Finance Corporation Act (47 Stat. 5); Securities Act of 1933 and 1934 (48 Stat. 74, 881); and also see Act Sept. 21, 1922 (42 Stat. 993, 48 U.S.C.A. § 862), which extended the National Prohibition Act to Puerto Rico.

■ We think section 9 of the Organic Act of Puerto Rico 1917 (48 U.S.C.A. § 734), has no application to acts expressly applicable to District Courts of the United States. It only has reference to general acts that are without special application, but are broad enough to apply to the "possessions," and in their purport are properly applicable thereto.

■ In paragraph (1) of section 24, Jud. Code, 28 U.S.C.A. § 41(1), the word "states" appears four times. The courts have interpreted the word as used in this paragraph and construed it according to its ordinary meaning and as not including a territory, district, or possession. Hepburn v. Ellzey, 2 Cranch, 445, 2 L.Ed. 332; New Orleans v. Winter, 1 Wheat. 91, 4 L.Ed. 44; Costan v. Manila Electric Co. (C.C.A.) 24 F.(2d) 383; Merrill et al. v. Atwood et al. (D.C.) 297 F. 630, 632; Maxwell v. Federal Gold & Copper Co. (C.C.A.) 155 F. 110, 111; Mutual Life Ins. Co. v. Lott et al. (D.C.) 275 F. 365.

"In adopting the language used in an earlier act Congress must be considered to have adopted also the construction given by this Court to such language, and made it a part of the enactment." Hecht v. Malley, 265 U.S. 144, 153, 44 S.Ct. 462, 465, 68 L.Ed. 949. "It is a well-settled rule of construction that language used in a statute which has a settled and well-known meaning, sanctioned by judicial decision, is presumed to be used in that sense by the legislative body." Kepner v. United States, 195 U.S. 100, 124, 24 S.Ct. 797, 802, 49 L.Ed. 114, 1 Ann.Cas. 655.

■ Where the language of an act is plain and unambiguous, there is no occasion to resort to conjecture or construction to find a hidden meaning. In such cases the courts cannot resort to speculation as to the probable intent of the Legislature, but a statute must be given effect according to its plain and obvious meaning.

From the course of legislation relating to the jurisdiction of the District Court of the United States for Puerto Rico since the Act of April 12, 1900 (31 Stat. 77), if it was intended by Congress to have the amendment of May 14, 1934, apply to the congressional District Court in Puerto Rico, we think it would have amended section 41 of the Organic Act, in which that court's jurisdiction was defined, and which departed from the principles controlling the jurisdiction of the District Courts in the United States. Garrozi v. Dastas, 204 U.S. 64, 75, 27 S.Ct. 224, 51 L.Ed. 369; Porto Rico Railway, Light & Power Co. v. Mor, 253 U.S. 345, 40 S.Ct. 516, 64 L.Ed. 944.

■ This construction is fortified by the rule usually followed in cases where an act adopts the provisions of an earlier act, viz., a later act amending an earlier act thus adopted does not affect the adopting act unless by express terms or clear intention.

By the Act of February 27, 1801 (2 Stat. 103), Congress conferred upon the Circuit Court of the District of Columbia all the powers by law vested in the Circuit Courts

and the judges of the Circuit Courts of the United States, which powers had been fixed by the Act of February 13, 1801 (2 Stat. 89). It was held in Kendall v. United States, 12 Pet. 524, 624, 625, 9 L.Ed. 1181, that a subsequent repeal of the Act of February 13, 1801, did not affect the jurisdiction of the Circuit Court of the District of Columbia. The decision of the court was not based on the question of a change of practice in the courts of the District of Columbia, as suggested by counsel for the Commission, but was placed on the following ground:

"It was not an uncommon course of legislation in the states, at an early day, to adopt, by reference, British statutes; and this has been the course of legislation by congress in many instances where state practice and state process has been adopted. And such adoption has always been considered as referring to the law existing at the time of adoption; and no subsequent legislation has ever been supposed to affect it. *And such must necessarily be the effect and operation of such adoption; no other rule would furnish any certainty as to what was the law; and would be adopting prospectively, all changes that might be made in the law. And this has been the light in which this court has viewed such legislation.*" (Italics supplied.)

The same rule was applied in Re Heath, 144 U.S. 92, 12 S.Ct. 615, 616, 36 L.Ed. 358, in which the court said:

"Prior acts may be incorporated in a subsequent one in terms or by relation, and when this is done the repeal of the former leaves the latter in force, unless also repealed expressly or by necessary implication. And the adoption in a local law of the provisions of a general law does not carry with it the adoption of changes afterwards made in the general law. This was so ruled in Kendall v. United States, 12 Pet. 524, 625 [9 L.Ed. 1181]."

Both these cases were cited as stating the correct rule of construction in Engel v. Davenport, 271 U.S. 33, 38, 46 S.Ct. 410, 70 L.Ed. 813.

The attempt of counsel for the Commission to differentiate the case of Kendall v. United States, supra, from the present case finds no support in the opinion of the court in the Kendall Case, as appears in the above quotation from its opinion, which is the reason assigned for the holding of the court, and not any confusion arising from a matter of practice as assigned by counsel for appellants. The confusion, which it is urged that would result when counsel were called upon to advise clients in the states whenever a change had been made in the Organic Law of Puerto Rico, would be doubly enhanced for attorneys in Puerto Rico, who could not rely on their Organic Law if it were subject to change by every act of Congress that amended statutes which had been adopted by reference as a part of the Organic Law.

■ The Johnson Act, which is in pari materia with section 266 of the Judicial Code as restricting the powers of the District Courts of the United States to safeguard the states against alleged hasty and inconsiderate interference by the federal courts with the orders of state commissions, therefore has no application to the District Court of the United States for Puerto Rico. There is no interference with the insular courts by the District Court of the United States for Puerto Rico in the same sense as between state courts and federal courts, as the insular courts and the District Court of the United States for Puerto Rico were both created by the same act and have no independent source of existence.

If the Johnson Act were held to apply to Puerto Rico, it is urged that there are several utilities to which it would not apply, such as the Porto Rican Gas & Coke Company, the Porto Rico Telephone Company, and the American Railroad Company, each of which operates utilities in Puerto Rico, but are not domiciled there, and therefore the District Court of the United States for Puerto Rico would have jurisdiction under section 41 of the Organic Act regardless of the Johnson Act. If this be so, Congress, we think, could not have intended such discrimination.

It is also clear that this action comes under one, at least, if not more, of the exceptions in the Johnson Act. It is not brought on the ground of a violation of the Constitution of the United States, but of the Organic Act, notwithstanding the Organic Act contains prohibitions against acts of the Legislature of Puerto Rico similar to those prohibited in the Constitution, viz., violating due process of law, equal protection of the law, and impairment of contracts. It is a congressional act, and not the Constitution of the United States, upon which jurisdiction is based in this case.

■■ A plaintiff has the right to decide upon which he will rely, Ex parte Hobbs, 280

U.S. 168, 172, 50 S.Ct. 83, 74 L.Ed. 353; and jurisdiction depends upon the plaintiff's statement of the ground on which his bill of complaint is based and those alone, Shulthis v. McDougal, 225 U.S. 561, 32 S. Ct. 704, 56 L.Ed. 1205; Taylor v. Anderson, 234 U.S. 74, 34 S.Ct. 724, 58 L.Ed. 1218; Bowe v. Scott, 233 U.S. 658, 665, 34 S.Ct. 769, 58 L.Ed. 1141; Layton v. Missouri, 187 U.S. 356, 358, 23 S.Ct. 137, 47 L. Ed. 214; Kipley v. Illinois, 170 U.S. 182, 187, 18 S.Ct. 550, 42 L.Ed. 998; Thomas v. Iowa, 209 U.S. 258, 263, 28 S.Ct. 487, 52 L.Ed. 782.

The District Judge also held that the Johnson Act does not apply to Puerto Rico, for the further reason that the Legislature of Puerto Rico has not provided a speedy, plain, or efficient remedy for one claiming to be injured by the decision of the Commission, citing the case of Ohio Valley Water Co. v. Ben Avon Borough, 253 U.S. 287, 40 S.Ct. 527, 64 L.Ed. 908. The act under which the Puerto Rican Public Service Commission was created was copied substantially from the Pennsylvania act; and, while the decision in that case followed the act establishing the Public Service Commission of Puerto Rico and the Legislature of Puerto Rico cannot be said to have adopted the construction of this statute by the Supreme Court, the reasoning of the Supreme Court in its opinion is persuasive on this point. The remedy provided by the act establishing the Public Service Commission of Puerto Rico may be as plain and may, or may not, be as speedy, yet under the decision in the Ohio Valley Water Co. Case, supra, it is not adequate or efficient, inasmuch as it does not provide for an independent judgment on the facts by an appellate court. Crowell v. Benson, 285 U.S. 22, 60, 52 S.Ct. 285, 76 L.Ed. 598; United Railways & Electric Co. v. West, 280 U.S. 234, 251, 50 S.Ct. 123, 74 L.Ed. 390; State Corporation Commission et al. v. Wichita Gas Co., 290 U.S. 561, 569, 54 S.Ct. 321, 78 L. Ed. 500. The Supreme Court has recently said of the power of an insular court, on appeal from a decision of the Commission, that the court is not authorized to substitute its judgment for that of the Commission. Public Service Commission of Puerto Rico v. Havemeyer, 56 S.Ct. 360, 80 L.Ed. —, decided January 6, 1936.

Pertinent questions are raised as to whether an appeal lies from a petition for a rehearing, Willis v. Davis (C.C.A.) 184 F. 889, 890; Cuno Engineering Corp. v. Hudson Auto Supply Co. (C.C.A.) 49 F.(2d) 654, 655; Marine Midland Trust Co. v. Eybro Corp. (C.C.A.) 58 F.(2d) 165, 167; Baker v. Walter Baker & Co., Limited (C. C.A.) 83 F. 3–5; but treating the appellee's petition as a motion to dissolve, as the District Court did in its decree, we think the motion should be denied.

Counsel for the Commission in support of their petition for rehearing and motion to dissolve the injunction contend that the court in granting the injunction did not have before it the order of the Commission, and attached to their petition a full copy; but counsel for the Commission was at liberty, if it had seen fit, to present it at the hearing on the application for an injunction. Prendergast et al. v. New York Tel. Co., 262 U.S. 43, 50, 43 S.Ct. 466, 67 L.Ed. 853.

The complainant was not obliged to offer it in full, as a part of its bill of complaint or in evidence. It set forth so much of it as it claimed showed that the order of the Commission was confiscatory and deprived it of its property without due process. If the court found that this might be sustained on a full hearing, it could in the exercise of a sound discretion order a temporary injunction to maintain the status quo until a full hearing was had on the merits before the court.

"It is well established doctrine that an application for an interlocutory injunction is addressed to the sound discretion of the trial court; and that an order either granting or denying such an injunction will not be disturbed by an appellate court unless the discretion was improvidently exercised. * * * The duty of this court, therefore, upon an appeal from such an order, at least generally, is not to decide the merits, but simply to determine whether the discretion of the court below has been abused." Alabama et al. v. United States et al., 279 U.S. 229, 230, 231, 49 S.Ct. 266, 73 L.Ed. 675.

"The only question presented by the record upon this appeal is whether the District Court abused its discretion in granting an injunction until the case could be heard upon the merits. * * * As no abuse of discretion is shown, the order must be affirmed." Mitchell v. Penny Stores, Inc., 284 U.S. 576, 52 S.Ct. 27, 76 L.Ed. 500.

In Ohio Oil Co. v. Conway, 279 U.S. 813, 815, 49 S.Ct. 256, 73 L.Ed. 972, in a per curiam the Supreme Court laid down the rule:

"Where the questions presented by an application for an interlocutory injunction are grave, and the injury to the moving party will be certain and irreparable, if the application be denied and the final decree be in his favor, while if the injunction be granted the injury to the opposing party, even if the final decree be in his favor, will be inconsiderable, or may be adequately indemnified by a bond, the injunction usually will be granted. Love v. Atchison, Topeka & Santa Fe R. Co. (C.C.A.) 185 F. 321, 331, 332."

In Love v. Atchison, Topeka & Santa Fe R. Co. (C.C.A.) 185 F. 321, 331, cited in the above case, the court again stated the rule in such cases:

"An appeal from an order granting or refusing an interlocutory injunction does not invoke the judicial discretion of the appellate court. The question is not whether or not that court in the exercise of its discretion would make or would have made the order. It was to the discretion of the trial court, not to that of the appellate court, that the law intrusted the granting or refusing of these injunctions, and the only question here is: *Does the proof clearly establish an abuse of that discretion?*" (Italics supplied.)

Also see Prendergast et al. v. New York Tel. Co., supra, 262 U.S. 43, at page 51, 43 S.Ct. 466, 67 L.Ed. 853; Meccano, Limited, v. John Wanamaker, 253 U.S. 136, 141, 40 S.Ct. 463, 64 L.Ed. 822; City of Louisville v. Louisville Home Telephone Co. (C.C.A.) 279 F. 949, 957; Florida Public Utilities Co. v. City of West Palm Beach et al. (C. C.A.) 36 F.(2d) 318; and in Rahley v. Columbia Phonograph Co. (C.C.A.) 122 F. 623, 625, the court said:

"The appellant sets out 10 assignments of error. They all go to the merits of the controversy, and could very properly be discussed if the case were here after a full hearing. But the question this court at this stage is called upon to decide is whether the court below, having the discretion to grant or refuse the temporary injunction, has in this instance abused its discretion."

The Supreme Court generally disposes of appeals from interlocutory orders granting temporary injunctions by affirming upon the authority of cases holding that the matter rests in the sound discretion of the trial court. Baldwin v. G. A. F. Seelig, Inc., 293 U.S. 522, 55 S.Ct. 120, 79 L.Ed. 632; Langer v. Grandin Farmers' Co-oper-ative Elevator Co., 292 U.S. 605, 54 S.Ct. 772, 78 L.Ed. 1467; Northwest Bancorporation v. Benson, 292 U.S. 606, 54 S.Ct. 775, 78 L.Ed. 1468; South Carolina Power Co. v. South Carolina Tax Commission et al., 286 U.S. 525, 52 S.Ct. 494, 76 L.Ed. 1268; Ogden & Moffet Co. v. Michigan Public Utilities Commission, 286 U.S. 525, 52 S.Ct. 495, 76 L.Ed. 1268; United Drug Co. v. Washburn, 284 U.S. 593, 52 S.Ct. 202, 76 L.Ed. 511.

We are not satisfied that there was any abuse of judicial discretion by the District Judge in granting the temporary injunction upon the giving of a bond to make restitution to its customers in case the order of the Commission is sustained, thereby preserving the status quo until a hearing on the merits. This is the only question before this court on this issue.

To enforce the order of the Commission, if the court should sustain the Power Co.'s contention that the order of the Commission was confiscatory in any substantial degree, the Power Co. would sustain irreparable injury, since it could not recover back from its customers the difference between the Commission's order and its rates, while its customers may be protected by a bond, which may be increased, if necessary, to restore to them any excess of rates collected by the company over those finally fixed in the order of the Commission. Ohio Oil Co. v. Conway, supra.

The Commission contends that the injunction should be dissolved because the full text of its decision was not before the court. What the Commission really objects to is that its reasoning by which it arrived at its findings is not set forth adequately in the complaint and affidavits. The findings which the Power Co. claims result in confiscation, however, are not disputed in the petition for rehearing or in the decision of the Commission, but are substantiated in the latter. Whether the claims of one party or the other are in accord with the decisions of the Supreme Court can only be determined on a hearing on the merits. Whether the reasons assigned for the findings of the Commission satisfy the court when all the evidence is before him can only be determined after a full hearing.

In determining the rate base, the parties are not in accord in the following respects: As to the historical cost of the plant of the Power Co., the Commission found it was approximately $5,900,000, while the Power

Co. contends that, if the changes to present price levels had been considered, the cost would have been approximately $7,000,000; what should be allowed annually for future depreciation, the Commission allowed $100,-000, the Power Co. contends at least $200,-000 should have been allowed; in estimating the reconstruction new of the plant, it is difficult to tell what the Commission allowed, although counsel in its brief states that its engineers estimated it as approximately $5,000,000, but so many elements that enter into it appear to be in dispute, and from the discursive discussion of this issue in the Commission's decision, we are unable to determine what the final estimate of the Commission was and what elements entered into its findings; as to what should be allowed for overhead expenses, the Commission allowed 15 per cent., while the Power Co. claims at least 20 per cent. should have been allowed; for going concern value, for which the Commission allowed $185,000, the Power Co. contends $800,000 should have been allowed; for working capital the Commission allowed $150,000, while the Power Co. claimed $325,000 is necessary; for hurricane reserve the Commission allowed $22,000, while the Power Co. claims $90,000 annually is necessary; as to what should be allowed for a management contract entered into by the directors of the company, the Commission allowed $5,000, the Power Co. contends it should have allowed $32,000; what should be allowed, if anything, for certain easements for its transmission lines and water power rights, the Commission discredited the plaintiff's evidence on these issues, and it does not appear what it allowed, if anything, on these items; as to whether proper unit prices were used in estimating cost of machinery; the Power Co. also claims that the Commission failed to take into consideration in estimating operating expenses, additional cost for workmen's compensation insurance under a new law passed immediately after the Commission's decision, or governmental competition in San Juan, which the Power Co. claims will reduce its income by $125,000 annually.

The Commission made a blanket reduction of 27.7 per cent. of the gross revenue of the Power Co. by which it is claimed the net revenues of the Power Co. exceed 8 per cent. on the fair present value of the property devoted to public use. The Power Co. contends that, if its gross revenues are reduced to this extent, even on the values found by the Commission, its net revenues will be less than 8 per cent. by some $12,000 to $15,000; and hence, if the claims of the Power Co. are sustained to any substantial amount, the order of the Commission will prove confiscatory.

■ Where questions both of law and facts are involved and the trial court in its discretion has issued a temporary injunction to preserve the status quo until these questions can be presented on final hearing, this court on appeal will not undertake to find the facts or to lay down rulings on specific issues in determining what the base rate should be, or whether certain items of expense should or should not be allowed, since the evidence is not before this court on which the findings of the Commission or the claims of the Power Co. are based. We therefore express no opinion on the merits of the respective claims, but will remand the case to the court below for final disposition on the evidence. Alabama v. United States, supra.

■ The District Judge having set forth his reasons for granting the injunction in his decision on the motion of the Power Co., it did not constitute error not to again set forth his reasons for denying the motion to dissolve under section 70½ of the Equity Rules (28 U.S.C.A. following section 723), which does not apply to a motion to dissolve.

Many questions are raised in the argument of counsel bearing on the merits of the controversies, but most of them have only an indirect bearing on whether the trial court abused its discretion in granting the temporary injunction.

The order of the District Court is affirmed, with costs of this court to the plaintiff.