CARIBBEAN TUBULAR CORPORA-TION, Plaintiff-Appellant,

v.

Herminio FERNANDEZ TORRECILLAS, et al., Defendants-Appellees.

Civ. No. 86–0491(PG).

United States District Court, D. Puerto Rico.

July 11, 1986.

Maximiliano Trujillo, Hato Rey, P.R., for plaintiff-appellant.

Pedro del Valle, Fed. Litigation Div., Dept. of Justice, Commonwealth of P.R., San Juan, P.R., for defendants-appellees.

## OPINION AND ORDER

PEREZ–GIMENEZ, Chief Judge.

The matter is before this Court on plaintiff's appeal from the Memorandum Opinion, Findings and Conclusions (hereinafter Memorandum Opinion) issued on July 29, 1985, by the U.S. Bankruptcy Court for the District of Puerto Rico. Plaintiff's brief was filed on May 2, 1986, and after an extension of time was granted, the appellees' brief in opposition was filed on June 10, 1986.

The appellees argue in their brief that this Court lacks jurisdiction to entertain the appeal because of the untimely filing of the notice of appeal. The following is a procedural history of the case.

1. On July 29, 1985, the Bankruptcy Court issued the Memorandum Opinion denying appellant's request for a preliminary injunction. On October 23, 1985, the Memorandum Opinion was filed.

2. On October 7, 1985, at a pretrial conference, the appellant requested voluntary dismissal of the new allegations contained in the amended complaint. On October 23, 1985, a dismissal order was filed.

3. On October 31, 1985, a motion requesting amendment to the dismissal order and judgment was filed asking the U.S. Bankruptcy Court to clarify its dismissal order by limiting it to the new allegations contained in the amended complaint.

4. On October 31, 1985, a notice of appeal was filed in relation to the July 29th decision. .

5. On February 13, 1986, the Bankruptcy Court denied plaintiff's motion requesting amendment to the dismissal order and judgment. Said denial was filed on February 24, 1986.[1]

■ According to appellees, under Bankruptcy Rule 8002[2] the previously referred

---

1. The dismissal order of October 23, 1985, dismissed the entire proceeding. Apparently, the U.S. Bankruptcy Judge overlooked the fact that appellants only requested the voluntary dismissal of the new allegations contained in the amended complaint. (See motion to withdraw request for injunction as to emergency purchase, filed on August 26, 1985; minutes of the pretrial conference held on October 7, 1985) Had the Bankruptcy Judge not overlooked this, it would have granted appellant's motion requesting amendment to dismissal order and to judgment. Therefore, we find that the partial judgment entered on October 23, 1985, in relation to appellant's request for preliminary injunction is alive and subject to appeal.

2. Rule 8002 states in part:
   If a timely motion is filed in the bankruptcy court by any party: (1) for judgment notwithstanding the verdict under Rule 9015; (2) under Rule 7052(b) to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; (3) under Rule 9023 to alter or amend the judgment; or (4) under Rule 9023 for a new trial, the time for appeal for all parties shall run from the entry of the

motion caused the notice of appeal of October 31, 1985, to be without effect. Therefore, appellant had ten days from February 24, 1986, to file a new notice of appeal. We disagree. Plaintiff's motion requesting amendment to the dismissal order and judgment was only directed at the voluntary dismissal order of October 23, 1985, and not to the Memorandum Opinion of July 29, 1985. The present appeal only involves the latter. Therefore, under Rule 8002 no new notice of appeal was needed.

The notice of appeal of October 31, 1985, was timely and valid. Therefore, this Court has jurisdiction over the appeal.

■ We now turn to the merits of the appeal. Among other things, appellant argues that the Bankruptcy Judge erred in holding that the Buy American Act (hereinafter BAA), 41 U.S.C. §§ 10a–10d (1986), was inapplicable to Puerto Rico. The BAA, passed on 1933, was an effort by Congress to foster and protect American industry, American workers and American invested capital. 76 Cong.Rec. 1896 (1933). The statute provides that American made articles and supplies be preferred in government contracts over bids containing foreign manufactured materials unless inconsistent with the public interest. In the present case, the successful bidder, co-defendant Girard, submitted a desk assembled in Puerto Rico from parts purchased and imported from Mexico. At the Bankruptcy Court, the appellees' position was that the BAA applies only to procurements and purchases made by the federal government and not by the government of the Commonwealth of Puerto Rico. We agree with the Bankruptcy Court that Congress intended the Act to be applicable to the government of Puerto Rico. The Bankruptcy Court stated:

First, the Act, by its terms, defines its scope of coverage by using the phrase "shall be acquired for *public use*" in Sec. 10a when determining what goods are to

order denying a new trial or granting or denying any other such motion. A notice of appeal filed before the disposition of any of the

be required to be produced or mined in the U.S.A..

In its definitional section (§ 10c) "public use" is defined as meaning "use by ... the United States, the District of Columbia, *Puerto Rico*, American Samoa, the Canal Zone, and Virgin Islands." [emphasis added] Defendants submit that the reference to Puerto Rico mentioned above means public use in Puerto Rico by the federal government.

If that was to be the case, then no reference to Puerto Rico was really needed since "public use" by the federal government, be it in Puerto Rico or anywhere, is "public use" by the United States. Our conclusion on Congress original intention to include the government of Puerto Rico within the purview of the Buy American Act is reinforced by looking at the amendments made to said § 10c.

In enacting the Hawaii Omnibus Act and Alaska Omnibus Act on occasion of their admission to the Union, Congress made the following expressions:

### BUY AMERICAN ACT

Section 43 amends the act of March 3, 1933, to delete a reference to Alaska. The amendment is technical only and does not change the geographical application of the Buy American Act insofar as the Federal Government is concerned. The amendment also makes clear that the law does not apply to the State of Alaska *as it did to the government of the Territory of Alaska*, since the Federal Government, of course, could not thus control the actions of a sovereign State. [U.S.Code Cong. & Adm.News, 1959, pp. 1695–1696]

### BUY AMERICAN ACT

Section 28 amends the Buy American Act to remove Hawaii from the definition of the terms "public use, public

above motions shall have no effect; a new notice of appeal must be filed. No additional fees shall be required for such filing.

building, and public work." The act will continue to apply to Federal activities in Hawaii, but will not apply to acquisitions by the State of Hawaii. The section to be amended is codified at 41 U.S.C. 10c(b). A similar amendment in the case of Alaska is contained in section 43 of the Alaska Omnibus Act. [U.S.Cong. & Adm.News, 1960, p. 2693].

Congress then made it very clear that the Act had been applicable to the governments of the territories of Alaska and Hawaii until they became states in 1959.

The Bankruptcy Court, however, found that the Federal Relations Act (FRA) of 1950, 48 U.S.C. §§ 731b–731e, rendered the BAA inapplicable to Puerto Rico for three reasons. First, that after the FRA, Puerto Rico's legal status was closer to that of a state than to a territory. Therefore, since the BAA did not apply to states, the change of Puerto Rico's legal status brought Puerto Rico out of the purview of the statute. Second, the Bankruptcy Court states that section 6 [3] of the FRA provides that all federal laws or parts of laws inconsistent with the provisions of this Act are hereby repealed. Third, the Bankruptcy Court relies in Section 9 of the FRA to find the BAA locally inapplicable to Puerto Rico. Section 9 states that the "statutory laws of the United States not locally inapplicable, except as hereinbefore or hereinafter otherwise provided, shall have the same force and effect in Puerto Rico as in the United States...."

We disagree on all three grounds.

First, had Congress intended to oust Puerto Rico from the coverage of the BAA it would have done so in 1959 when it excluded Alaska and Hawaii.[4] Second, even though Congress has allowed Puerto Rico to exercise internal autonomy similar to that to which the States are entitled, Puerto Rico undoubtedly remains, constitu-

tionally speaking, an unincorporated territory of the United States. See Juan R. Torruella, *The Supreme Court and Puerto Rico: The Doctrine of Separate and Unequal* (1985). As stated by Dr. David M. Helfeld, former Dean of the University of Puerto Rico's Law School and noted constitutional scholar:

> Though the formal title has been changed, in constitutional theory Puerto Rico remains a territory. This means that Congress continues to possess plenary but unexercised authority over Puerto Rico. Constitutionally, Congress may repeal Public Law 600, annul the Constitution of Puerto Rico and veto any insular legislation which it deems unwise or improper. From the perspective of constitutional law the compact between Puerto Rico and Congress may be unilaterally altered by the Congress. The compact is not a contract in a commercial sense. It expresses a method Congress chose to use in place of direct legislation ... Constitutionally, the most meaningful view of the Puerto Rican Constitution is that it is a statute of the Congress which involves a partial and non-permanent abdication of Congress' territorial power.[5]

Furthermore, politically, Puerto Rico remains a territory, having no vote in Congress and no vote in Presidential elections.

With regard to section 58 of the FRA, we find that because of Puerto Rico's territorial status the BAA is consistent with the FRA.

Third, we find that section 9 of the FRA is inapplicable to the present case. Section 9 refers only to federal statutes of general application where Puerto Rico was not mentioned specifically, contrary to the BAA where Puerto Rico is expressly mentioned. *See, Muñoz v. Porto Rico Ry. Light & Power Co.*, 83 F.2d 262 (1st Cir.

---

**3.** The Bankruptcy Court must have meant section 58 of the FRA instead of section 6.

**4.** The Commonwealth of Puerto Rico was proclaimed by its governor on July 25, 1952.

**5.** David Helfeld, *Congressional Intent and Attitude Toward Public Law 600 and the Constitution of the Commonwealth of Puerto Rico,* 21 Rev.Jur.U.P.R. 255, 307 (1952).

1936); [6] *Arnold H. Leibowitz, The Applicability of Federal Law to the Commonwealth of Puerto Rico,* 37 Rev.Jur.U.P.R. 615, 634 (1968).

 With regard to appellant's prayer of relief, appellant requests an injunction against all defendants forbidding the purchase and/or sale of all school desks made in foreign countries. Such an injunction is inappropriate in light of the discretion given by section 10a of the BAA to government officials to consider the cost and the public interest involved. Furthermore, the Eleventh Amendment forbids appellant's request for monetary relief. *See, Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

WHEREFORE, in light of the above, the Bankruptcy Court is REVERSED and the Commonwealth officials which are defendants in this case are ORDERED to obey the BAA.

IT IS SO ORDERED.

---

**6.** The Court in *Muñoz,* 83 F.2d at 266, stated: We think section 9 of the Organic Act of Puerto Rico 1917 (48 U.S.C.A. § 734), has no application to District Courts of the United States. It only has reference to general acts that are without special application, but are broad enough to apply to the "possessions" and in their purport are properly applicable thereto.